(No. 47324.—

VINCENT J. KRAUSE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Clifford Jacobs Forging Company *et al.,* Appellees.)

*Opinion filed November 25, 1975.*

CREBS, J., took no part.

Perz and McGuire, of Chicago (Frank M. Perz and James C. Serkland, of counsel), for appellant.

Phillips, Phebus, Tummelson & Bryan, of Urbana (George G. Bryan, of counsel), for appellees.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

An arbitrator of the Illinois Industrial Commission awarded compensation to claimant, Vincent J. Krause, of $83 per week for 21 4/7 weeks of temporary total incapacity and $65 per week for 185 3/4 weeks for the permanent loss of 25% of the left arm, 20% of the right arm, and 20% of both legs (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(b) and (e)) as the result of injuries arising out of and in the course of his employment. On review, the Industrial Commission modified the award to 64 weeks of temporary total incapacity and 192 3/4 weeks of payments for the permanent loss of 35% of the left arm, 30% of the right arm and 20% of the right leg. The circuit court of Champaign County reduced the award for temporary total incapacity to 9 3/7 weeks, but otherwise affirmed the Industrial Commission. Direct appeal to this court is pursuant to Supreme Court Rule 302(a). Ill. Rev. Stat. 1973, ch. 110A, par. 302(a).

Claimant argues that he should be awarded compensation for permanent total disability. His alternate contention is that the circuit court erred in reducing the Industrial Commission's award for temporary total incapacity from 64 to 9 3/7 weeks.

On November 24, 1970, while employed by respondent as a machinist, claimant was struck in the chest by a large wrench when the milling machine he was operating slipped into the wrong gear. The impact of the wrench directly caused several broken ribs and a collapsed lung and indirectly caused serious, permanent orthopedic injuries when claimant fell on his head after the force of the impact knocked him over his work table. He returned to work seven weeks after the accident, but shortly thereafter missed two more weeks of work due to a cold, the effects of which could have been related to the chest injury. During the next two years, despite regular physical therapy treatment, claimant experienced severe pain in his neck, back, arms and legs and a loss of strength in his hands. He did, however, perform his normal duties, which involved considerable physical activity, in a satisfactory manner until his voluntary retirement on January 19, 1973. From the date of his accident, claimant was under the care of a number of physicians, chest, heart and orthopedic specialists, whose reports are a part of the record. Prior to his retirement, their findings can be summarized as indicating that he would have continuing orthopedic problems, but none of these physicians indicated that claimant was permanently disabled or recommended that he retire. Several months after his retirement, Dr. Wojnar, who had coordinated claimant's care since the accident, discovered that claimant had a heart problem. It was only after this discovery and his subsequent treatment by a heart specialist that Dr. Wojnar concluded: "I do not believe as a medical man that Mr. Krause is employable. He is almost constantly in pain. He can't bend forward or laterally or in any plane of activity which would be required in any kind of even menial work or even sedentary work, reaching and bending without excruciating pain and joint limitation, in addition to having to take medication regularly and be under risk at all times of heart decompensation and arrhythmic changes in his heart." Claimant contends that

the findings of all the doctors, but particularly those of Dr. Wojnar, established that the accident of November 24, 1970, produced certain cardiac and orthopedic problems which have resulted in his permanent total disability.

Claimant argues that since there is no conflicting medical evidence in this case, the decisions of the Industrial Commission and the circuit court must be set aside as contrary to the manifest weight of the evidence, citing several of our decisions which hold that an Industrial Commission award cannot be sustained if contrary to undisputed, uncontroverted and unrebutted medical evidence. (*Hook v. Industrial Com.* (1972), 53 Ill.2d 245; *Kerz v. Industrial Com.* (1972), 51 Ill.2d 319; *Hartwell v. Industrial Com.* (1972), 51 Ill.2d 562; *Lewandowski v. Industrial Com.* (1969), 44 Ill.2d 204.) In our judgment, however, the medical evidence in this case is not so clear and definite. While Dr. Wojnar's testimony may establish that claimant is now permanently disabled as a result of both orthopedic and heart problems, it cannot be said to establish that his heart problems were caused by the accident of November 24, 1970. On the question of causation, Dr. Wojnar concluded that "I believe the cardiac condition is related to the accident of November 24, 1970, if in no other way than by aggravation." That statement is not, however, conclusive when considered in light of the other evidence in the record. Claimant was under the continuous care of several physicians from the day of the accident, yet the heart problem was not discovered until 2½ years after the accident and did not prevent his continued employment during most of that period. Dr. Wojnar's partner, Dr. Stone, a heart specialist, diagnosed the heart problem as "probable arteriosclerotic heart disease with sustained atrial flutter," an illness that would normally develop over a number of years. While the Commission could have concluded that the claimant's heart condition was causally related to the accident, its contrary conclusion is not against the manifest weight of

the evidence.

As to claimant's alternate contention, we agree with the circuit court that the Industrial Commission's award of 64 weeks of temporary total incapacity was against the manifest weight of the evidence. Claimant missed seven weeks of work after his accident and another two weeks a short time later, but then worked without interruption until his retirement in January, 1973. "Within the meaning of the compensation act, temporary total disability exists from the time an injury incapacitates an employee for work until such time as he is as far recovered or restored as the character of the injury will permit." (*Arbuckle v. Industrial Com.* (1965), 32 Ill.2d 581, 586.) The medical evidence reveals that upon his return to work after nine weeks of temporary incapacity, claimant was as far recovered as his injuries would permit and he in fact suffered no further temporary incapacity. Since there is no evidence in the record to support an award of 64 weeks of temporary total incapacity, that award cannot stand. And as the undisputed evidence establishes approximately nine weeks of temporary total incapacity, the reduction by the circuit court from 64 weeks to 9 3/7 weeks was clearly justified.

Accordingly, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.