(No. 48467.-

ILLINOIS VALLEY IRRIGATION, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Lois Bamberger, Appellee.)

*Opinion filed April 5, 1977.*

CLARK, J., dissenting.

Bayler and Noetzel, of Peoria (John E. Mitchell, of counsel), for appellant.

Knuppel, Grosboll, Becker & Tice, of Petersburg (John L. Knuppel and John E. Grosboll, of counsel), for appellees.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

In June of 1971, the petitioner, Lois Bamberger, on behalf of herself and two minor children, filed a claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.1 *et seq.*) with the Industrial Commission to recover for the death of her husband, John K. Bamberger, who had been employed by the respondent, Illinois Valley Irrigation Corporation. (The record does not disclose the reasons for the unusual delay in the completion of proceedings prior to appeal to this court.) An arbitrator's decision denying her claim was reversed by the Industrial Commission, and the circuit court of Peoria County confirmed the Commission's award. The respondent has appealed directly to this court under our Rule 302(a)(2). 58 Ill. 2d R. 302 (a)(2).

On Monday, May 25, 1970, Bamberger and a co-worker drove from Havana to a jobsite in Woodstock. They had been assigned to replace a section of underground plastic irrigation pipe with iron pipe and to also replace pivot points on an irrigation system. They drove separate pickup trucks, loaded with 8-inch-diameter, 12-gauge iron pipe, which weighed 9 pounds per running foot. Four 20-foot lengths of this pipe were hung on a rack above the bed of the trucks, approximately 6½ feet above the ground. Other 10-foot sections of pipe and four pivot points, each weighing 60 to 90 pounds, were on the beds of the trucks. The two men arrived at 12:30 p.m. at the farm where the work was to be done and unloaded the materials by hand. It was a sunny day and the temperature was in the low 80's. It took them 1 hour and 15 minutes to unload the trucks.

After unloading the materials the two went to the motel in Woodstock where they were staying, washed and then went out and played nine holes of golf. After playing, Bamberger complained of "not feeling too good" and of "indigestion." That night he slept in a chair, complaining

he could not sleep lying down because of the "indigestion."

On Tuesday morning Bamberger and his partner went to the farm to install the pipe and pivot points in a trench 4 feet below the ground. While the co-worker was in the trench, Bamberger would lower the pipes and pivot points into it. He would then enter the trench and help to align the materials. Bamberger was also adjusting and operating various valves and sprinklers on the irrigation system. Twice during the morning and once in the afternoon he complained of indigestion and rested for brief periods. He slept in a chair again that night.

On Wednesday, Bamberger assisted his co-worker in aligning the pipes and materials in the trenches and worked the valves on the system. He also drove to another farm and picked up pieces of 8-inch, 12-gauge pipe and brought them to the work site. During the day he again complained several times of "indigestion" and several times he had to sit down and rest.

That night, May 27, Bamberger experienced difficulty in breathing and went to Memorial Hospital in Woodstock, where he was admitted to the intensive care unit. He told the physician there, Dr. Ray Pensinger, that he had been in excellent health until he had developed a shortness of breath on the golf course two days earlier. The initial diagnosis was a myocardial infarction, but after numerous tests were conducted the diagnosis on his discharge from the hospital was heart disease of unknown cause, manifested by congestive heart failure. There was also a diagnosis of ventricular extrasystolies, or premature or additional contractions of the heart.

On June 14, 1970, Bamberger was discharged from Memorial Hospital and came under the care of Dr. Donald Stehr, his family physician. On June 16, Dr. Stehr examined him and found no abnormal symptoms. He later referred Bamberger to a cardiologist, Dr. Harry Warren, who reported no abnormalities except the ventricular

extrasystolies. However, the report concluded: "I'm not sure what this man had. I really would feel that he must have had a mild coronary and I would treat him as such."

Bamberger did not perform any physical duties in his employment from the date of discharge from Memorial Hospital to the date of his death. He was in the office a couple of hours a day and made telephone calls and did clerical work. On July 24, he died suddenly while announcing a little league baseball game. The cause of death was reported as pulmonary edema due to acute myocardial failure.

At the hearing before the arbitrator Dr. Pensinger testified for the petitioner that there could have been a causal relation between Bamberger's work on the irrigation system and his condition of ill being at Memorial Hospital. He stated that there also could be a causal relation between the work and his death on July 24. Dr. Stehr testified substantially to the same effect. Although Dr. Stehr stated that he might not have approved Bamberger's serving as an announcer at a baseball game, such activity, he said, was not likely to bring on a heart condition or aggravate an existing one. On cross-examination both doctors testified that physical exertion was not required to bring about Bamberger's type of heart condition, but that it certainly may have contributed to it.

Dr. George Parker, as a witness for the respondent, testified in response to a hypothetical question that in his opinion there was no causal relation between Bamberger's work and the heart condition which resulted in his death. He stated that Bamberger had suffered from arteriosclerosis of the coronary arteries and that his work had been unrelated to the development of the disease.

Respondent contends that the decision of the Industrial Commission that Bamberger's death arose out of and in the course of employment is contrary to the manifest weight of the evidence. In support of this contention it argues that weight should be given an arbitrator's decision

denying compensation, especially where the Commission does not consider new evidence, as was the case here.

In reviewing a decision of an arbitrator the Commission exercises original and not appellate jurisdiction and is not bound by the arbitrator's findings. (*Wirth v. Industrial Com.*, 63 Ill. 2d 237, 241.) This is true whether or not the Commission considers additional evidence on review. As was stated in *American Smelting & Refining Corp. v. Industrial Com.*, 13 Ill. 2d 275, 279-80: "The arbitrator and the Industrial Commission drew diametrically opposite inferences and conclusions from the medical testimony. Regardless of whether the commission hears testimony additional to that heard by the arbitrator, it exercises an original jurisdiction and is in no way bound by the arbitrator's findings." When the arbitrator and the Commission reach different conclusions, a court will not overturn the Commission's decision unless it is contrary to the manifest weight of the evidence. *Esposito v. Industrial Com.*, 12 Ill. 2d 305, 306.

The respondent argues that the petitioner failed to prove a causal relation between Bamberger's death and his work on the irrigation system. It says that his death while announcing a baseball game, which occurred more than five weeks after he was discharged from the hospital, was totally unrelated to his employment.

Whether an injury arises out of and in the course of employment is a question of fact to be determined by the Industrial Commission, which is to make reasonable inferences and draw conclusions from the evidence. (*Warren v. Industrial Com.*, 61 Ill. 2d 373, 376.) On review, a court will not reject permissible inferences drawn by the Commission because different inferences might also have been reasonably drawn, nor will it substitute its judgment for that of the Commission unless the findings are contrary to the manifest weight of the evidence. *Health & Hospitals Governing Commission of Cook County Hospital v. Industrial Com.*, 62 Ill. 2d 28, 32.

That Bamberger did not die until two months after the cardiac incident does not require reversal of the Commission's decision if it could be reasonably inferred that there was a causal relation between the physical stress of his work and the injury. In *Sohio Pipe Line Co. v. Industrial Com.*, 63 Ill. 2d 147, the claimant suffered a heart attack on his day off. On the previous day he had engaged in strenuous work and "got to feeling bad" just before quitting time. In affirming the Commission's award this court stated: "[T] he fact that the ultimate manifestation of the injury does not occur' while the employee is actually engaged in the performance of his duties does not preclude a finding that the impairment began while he was at work." 63 Ill. 2d 147, 152; accord, *Andronaco v. Industrial Com.*, 50 Ill. 2d 251.

Too, that Bamberger may have had an arteriosclerotic condition or even a cardiac condition prior to May 25, 1970, would not of itself preclude an award of compensation. This court has held that evidence that the employee may have a preexisting heart condition does not render an award of compensation against the manifest weight of the evidence, where the Commission may legitimately have inferred from the evidence that the employee's occupational activity was a causative factor in accelerating his death. *Cossident v. Industrial Com.*, 57 Ill. 2d 33, 37; *Board of Education v. Industrial Com.*, 44 Ill. 2d 123, 127; *Rock Road Construction Co. v. Industrial Com.*, 37 Ill. 2d 123, 127-28.

Here Bamberger first manifested cardiac symptoms following strenuous work in warm weather. He had been in good health prior to that time. During the following two days of work he complained several times of feeling ill and was forced to rest. Then he had an emergency hospitalization and the diagnosis was that he had had a heart condition. He never resumed his normal activities. Two physicians who had treated Bamberger testified that there could be a causal relation between his work, as we have

described, and his illness and death. Although the respondent's physician witness testified that in his opinion there was no causal relation, our holdings make it clear that where there was conflicting medical testimony as to causation, it was for the Commission to determine which testimony was to be accepted. *Pathfinder Co. v. Industrial Com.*, 62 Ill. 2d 556, 567-68; *Moore v. Industrial Com.*, 60 Ill. 2d 197, 203.

Based on this record we conclude that the Commission could have reasonably found that Bamberger's strenuous work activities were a causative factor in his death. We cannot say that its finding was against the manifest weight of the evidence.

For the reasons given, the judgment of the circuit court of Peoria County is affirmed.

*Judgment affirmed.*

MR. JUSTICE CLARK, dissenting:

I would reverse. The Industrial Commission's overturning of the arbitrator's decision was contrary to the manifest weight of the evidence. Although it is true that the Commission is not bound by an arbitrator's findings, an "arbitrator's decision is not without legal effect and can be relied upon" to reverse the Commission when its decision is "against the manifest weight of the evidence." (*Lewandowski v. Industrial Com.* (1969), 44 Ill. 2d 204, 206-07. See also *Quick v. Industrial Com.* (1972), 53 Ill. 2d 46.) The reason for this is that the arbitrator is "in a better position to evaluate" a petitioner than is the Commission or the court. 44 Ill. 2d 204, 206.

The evidence does not clearly establish that the decedent's death arose within the course of his employment with Illinois Valley. It is ambiguous at best. Decedent Bamberger, as the coroner's report showed, suffered from coronary artery insufficiency. Although the medical testimony indicated that exact causes of coronary congestion such as suffered by Bamberger are not known, there was

no unequivocal or emphatic support given to the petitioner's argument that the death resulted from injuries within the scope of employment. Indeed, two doctors who testified for the petitioner, the decedent's wife, only said the injuries *could* have resulted from activities within the scope of employment; and respondent Illinois Valley's medical witness, a specialist in internal medicine, testified that decdent Bamberger's death was unrelated to his work.

Bamberger complained of not feeling well only after a golf game on May 25, 1970, and was hospitalized two days later. Upon discharge, two weeks later, the diagnosis was that he had premature or additional contractions of the heart. Between his release from the hospital and his death on July 24, 1970, he performed no physical activities at work. Against the advice of his physician, he announced a little league game. He died while announcing.

The decision of the Commission and the affirmation by the circuit court were contrary to the arbitrator's decision and the manifest weight of the evidence in my view. A causal connection between Bamberger's death and his work has not been established.