(No. 53489.—)

THOMAS J. DOYLE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Transport Underwriters Association, Appellee).

*Opinion filed October 21, 1981.—Rehearing denied November 25, 1981.*

Louis B. Garippo, Ltd., of Chicago, for appellant.

Gerlad O. Sweeney, Sweeney & Riman, Ltd., of Chicago, for appellee.

MR. JUSTICE SIMON delivered the opinion of the court:

Vivid coronary pain struck the claimant on August 13, 1976, while he was at lunch with a business associate. He went to a hospital and was admitted, only to suffer a heart attack resulting in permanent disability two days later. He brought a claim for workers' compensation with which the arbitrator agreed but which the Industrial Commission did not allow. The circuit court of Du Page County confirmed the Commission. The record shows that the claimant suffered from progressive heart disease and that his heart attack was the natural result of that disease; the Commission's decision that there was no accidental injury arising out of or in the course of the claimant's employment was not

against the manifest weight of the evidence.

Thomas J. Doyle, the claimant, was 52 at the time of the attack. He stood 6 feet 2½ inches tall and weighed about 250 pounds. Doyle had suffered chest pains as far back as 1965 and 1970; they became regular after 1973. In 1974 a stress test revealed that he suffered from ischemic heart disease, a shortage of blood to the heart caused by a buildup of atherosclerotic plaque within the coronary arteries. Both parties offered medical opinions that the recurring chest pains Doyle felt were symptoms of the disease. As the three coronary arteries became increasingly blocked, the blood supply to his heart was further reduced so that the chest pains recurred more often and more severely. When the heart needed a larger supply of blood, as in periods of physical activity or emotional stress, the arteries were not able to supply it and pain resulted. In this way, stress could be said to cause the symptoms, though not the disease.

The doctors stated their beliefs that if heart disease such as Doyle's progressed far enough, an acute myocardial infarction would occur when the arteries were finally blocked completely. Although such a heart attack could come during a time of stress, many occurred in periods of rest. The explanation was that the patient would be carried through a stressful period by a surge of adrenalin, but when conditions calmed and the flow of adrenalin ceased the heart would be unable to continue without a sufficient blood supply. As the blockage of the arteries progressed, it took less and less stress to bring on incidents of chest pain.

Doyle's attack came on the Friday of his first week back at work after a week's vacation. Doyle sold insurance and was preparing to make a presentation to a potential client Friday afternoon. That morning, he met informally with fellow workers and speculated about additional duties they might be forced to take on with the closing of one of the firm's regional offices. Doyle felt pains during this discussion. When he sat down to lunch, he felt something much

stronger than the usual bouts of pain, so he went to the hospital for an examination. There, his doctor concluded that Doyle was in an intermediate coronary syndrome. He was admitted and suffered an acute myocardial infarction the following Sunday evening. Later tests showed that his three coronary arteries were 80, 90 and 100 percent blocked, respectively.

The Industrial Commission ruled that Doyle's disability was the "natural evolution" of his heart disease. Disabilities resulting from heart attacks differ from traumatic disabilities (like a leg broken by a falling weight) because the claimant is equally ill before and after the heart attack. The attack is simply a symptom, although a potentially disastrous one, of the underlying disease. The causes of heart disease are not completely known, but several risk factors have been identified. Cigarette smoking, both doctors here agreed, is a major risk factor; Doyle smoked three to four packs a day when his disease was diagnosed and had cut down to one or two packs a day at the time of his attack. Obesity and diabetes are also linked to heart disease; at the time of diagnosis Doyle was advised to lose weight and was put on medication to keep his diabetes under control.

The employer's medical expert thought that nothing at work contributed to Doyle's disease. Doyle's doctor thought that work-related stress might have contributed to the attack; in fact, he had told Doyle to take it easy at work when the heart disease was diagnosed. The medical opinions were not necessarily conflicting—the underlying cause of the disability was the heart disease regardless of the factors that brought on the myocardial infarction. But the law does not turn on the long-range or deep-seated causes of a disability. Instead, the factors which precipitated the claimant's current disability were critical, for the law considers that to hasten the disability is to cause it.

Thus, the rule has evolved that even if an employee suffers from heart disease, if the heart attack which brings

on the disability is work related, the employee may recover workers' compensation. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17.) This is true whether the attack occurs at work or after the employee has left. (*McLean Trucking Co. v. Industrial Com.* (1978), 72 Ill. 2d 350, 357; but see, *e.g., Krause v. Industrial Com.* (1975), 62 Ill. 2d 72.) The reason for the latter rule is clear—a myocardial infarction may become manifest only hours after the physical or emotional stress that triggered it.

The general rule has been stated that employers take their employees as they find them. (*Johns-Manville Products Corp. v. Industrial Com.* (1979), 78 Ill. 2d 171, 177.) If there is work-related stress, physical or emotional, that so aggravates the disease as to cause the heart attack, then there is accidental injury arising out of and in the course of employment. Compensable disabilities have been found where an attack was triggered by physical stress like being hit in the chest by a board (*Interlake, Inc. v. Industrial Com.* (1981), 86 Ill. 2d 168), moving pipes (*Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234; *Johns-Manville Products Corp. v. Industrial Com.* (1979), 78 Ill. 2d 171; *Sohio Pipe Line Co. v. Industrial Com.* (1976), 63 Ill. 2d 147), falling off a ladder (*Health & Hospitals Governing Com. v. Industrial Com.* (1979), 75 Ill. 2d 194), driving a semitrailer truck cross-country (*McLean Trucking Co. v. Industrial Com.* (1978), 72 Ill. 2d 350), doing manual labor under conditions of extreme heat or cold (*Lepper v. Industrial Com.* (1978), 71 Ill. 2d 216), running four blocks to render emergency aid (*Cossident v. Industrial Com.* (1974), 57 Ill. 2d 33), or covering a load of hot asphalt with a tarpaulin (*Rock Road Construction Co. v. Industrial Com.* (1967), 37 Ill. 2d 123).

Compensable disabilities have also been found where the attack was triggered by emotional stress like preparing to participate in an alcoholism treatment program (*Sears, Roebuck & Co. v. Industrial Com.* (1980), 79 Ill. 2d 59),

working in a tax-collection office during the final week for paying taxes (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10), directing a unit of fire fighters at a blaze (*Town of Cicero v. Industrial Com.* (1949), 404 Ill. 487), or handling a company's affairs during bankruptcy (*Wirth v. Industrial Com.* (1974), 57 Ill. 2d 475). When workers' physical structures, diseased or not, give way under the stress of even their usual tasks, the law views this as an accident arising out of and in the course of employment. *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17.

The one exception to this rule is when the heart disease is so far gone that any stress, even the most ordinary exertion, will bring on the massive symptom of heart attack. In that case the employer is not liable, because it is only coincidence that the attack occurred at work rather than somewhere else—the disability can truly be said to be not work related. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 18.) Thus, compensation is denied where the employee's disability is brought on under exertion no greater than would be expected by the general public, as where the worker sat at a desk, taking orders, then walked towards a first-aid station (*Schoonover v. Industrial Com.* (1981), 86 Ill. 2d 321), where the employee's attack followed a walk around a freight yard, checking vehicles (*Smith's Transfer Corp. v. Industrial Com.* (1979), 76 Ill. 2d 338), where the employee reached up to close an overhead elevator door (*Sershon v. Industrial Com.* (1976), 63 Ill. 2d 395), or spent the morning building pieces of wooden chairs at a slightly faster than usual rate (*Pontiac Chair Co. v. Industrial Com.* (1974), 59 Ill. 2d 261), where the claimant walked to and from an office four blocks away (*Illinois Bell Telephone Co. v. Industrial Com.* (1966), 35 Ill. 2d 474), or up and down stairs to assist a store window trimmer (*D. Lelewer & Son v. Industrial Com.* (1965), 33 Ill. 2d 118), or where the worker had an argument at work over scheduling and pay (*Stewart Warner, Datafax Corp. v. Industrial Com.* (1979),

76 Ill. 2d 464).

It is the Industrial Commission's responsibility to decide if there is stress, if it is work related, and if the disease has progressed so far as to trigger an attack under even the most ordinary exertion. *Okaw Homes, Inc. v. Industrial Com.* (1968), 40 Ill. 2d 81, 84.

Doyle argues that here there is a history of work-related emotional stress which aggravated his condition and triggered his attack. Although Doyle had risen to the position of regional sales manager for his company, budgetary cutbacks recently ordered had left him by 1976 without any field salesmen or brokerage clerks. He and his secretary were asked to pick up the slack; at the same time Doyle's superiors asked for an increase in business in his region by a third. Doyle said that it was a trying time for insurers anyway, because a rise in workers' compensation rates had left customers irritable. In the eight months before his heart attack, Doyle spent about 10 hours a day in the office, along with some weekends. He also traveled several thousand miles on business, remaining away from home for 19 successive days in February 1976. Doyle handled 17 sales accounts, 12 by himself, a load his superior characterized as normal for a regional sales office. Of 19 presentations made in 1976 to potential clients by Doyle, 11 were successful.

Doyle said that his vacation the week before his heart attack was his first in five years. His superior remembered vacations in 1973 and 1975 as well. The August 1976 vacation was interrupted when Doyle had to be called by his superior to locate a file on a potential client which Doyle had taken out of the office. He chastised Doyle for failing to leave with his secretary a number where Doyle could be reached. The week after vacation was spent catching up on matters and dealing with a "very precise" client who was dissatisfied with the service he had been getting.

The Industrial Commission referred to the testimony of Doyle's doctor in finding that the disability was the natural

evolution of the heart disease. Doyle's doctor testified that the myocardial infarction could have occurred absent any exertion. The Commission implicitly found, therefore, that Doyle's attack was not caused by work-related stress, but that the heart disease had progressed to the point where any stress was too much. This factual determination does not appear to be contrary to the manifest weight of the evidence, and so the Commission's decision was correctly confirmed.

*Judgment affirmed.*