STEVE FOLEY CADILLAC/HANLEY DAWSON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Gennie Mobley, Appellee).

First District (Industrial Commission Division)   No. 1—95—4387WC

Opinion filed September 27, 1996.

RAKOWSKI, J., dissenting.

Brad A. Elward and Karen L. Kendall, both of Peoria, for appellant.

Leo F. Alt, of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Gennie Mobley, sought benefits pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) for injuries relating to a stroke that occurred on March 15, 1987, after a "heated" argument at work. The arbitrator awarded both temporary total disability and permanent partial disability benefits. On review the Industrial Commission (Commission) modified the arbitrator's determination to award claimant permanent total disability benefits. The circuit court of Cook County confirmed the decision of the Commission. Employer, Steve Foley Cadillac/Hanley Dawson, appeals, contending that the finding of claimant's condition of ill-being being causally related to his employment is against the manifest weight of the evidence and that claimant is not entitled to permanent total disability benefits when claimant is retired, already working part-time and failed to show a diligent attempt to obtain alternative employment. We affirm.

In 1985, claimant, a new and used car salesman, retired after

working 11 years for employer. In 1986, however, claimant returned to work on a part-time basis at employer's request to help handle certain former customers of claimant. On March 15, 1987, claimant, then aged 63, arrived at work at approximately 7:45 a.m. to meet a customer who needed some repairs performed on his auto. The car was to be finished by early afternoon, but at 4 p.m., claimant discovered the customer was still waiting for his car. Claimant approached the service manager and, according to claimant, a heated argument ensued. The argument, consisting of shouting and cursing, lasted between 5 and 10 minutes and was eventually broken up by another manager. Upon claimant's return to the showroom, one of the salesmen noted claimant was wobbling and offered to drive him home. Claimant refused and attempted to drive himself home. On the way, claimant realized his vision was deteriorating. He rested at home that evening but became progressively worse. The next day claimant fell in the bathroom and was unable to get up by himself. While claimant did not feel anything hurting, his wife noticed his mouth was twisted and his speech was deteriorating. Claimant was taken to the hospital for treatment. The hospital diagnosis was left pontine infarction with right hemiparesis and speech impairment. Claimant required extensive medical care and still remains under medical treatment. He now walks with a cane and has impairment on his right side. Claimant did not return to work for employer, and, in fact, employer has gone out of business. Claimant does, however, work a few hours a month as a "closer" on an "on-call" basis for a different dealership. Claimant began working as a closer for the new dealership in 1989.

The service manager with whom claimant allegedly argued testified he had a good relationship with claimant and did not recall any heated argument in March 1987. The manager who allegedly broke up the argument also denied any knowledge of the verbal altercation. The customer who was waiting to get his car repaired, however, stated an argument did occur between claimant and the service manager. He left before the argument concluded because he became too uncomfortable listening.

Dr. Nathaniel Greenberg, claimant's examining physician, opined claimant suffered a stroke which was causally related to the March 15 argument. According to the doctor, claimant initially sustained a transient stroke on the left side which resolved itself and then experienced a stroke on the right side. The doctor believed claimant did not experience two events but suffered from an ongoing process which began during the argument. Dr. Greenberg specifically found impairment of speech, weakness on the right side, and mild facial pa-

ralysis. He did not believe claimant was capable of employment in light of his impairments and difficulty walking even with assistance. Employer's expert, on the other hand, believed claimant suffered three ischemic events with the first two resolving themselves without any negative residual effects. The third event, from which claimant now suffers, was not related in any way to his work activities or the alleged "heated" argument according to employer's expert. The doctor opined claimant's condition of ill-being was simply a progression of disease in his arterial system.

Prior to March 15, 1987, claimant had no history of strokes or heart attacks and had been in good health with the exception of a minor high blood pressure condition. Claimant also testified he never smoked and virtually never drank and there is no history of heart attacks or strokes in his family.

■ It is the function of the Industrial Commission to decide questions of fact and causation, to judge the credibility of witnesses and to resolve conflicting medical evidence. *Lasley Construction Co. v. Industrial Comm'n*, 274 Ill. App. 3d 890, 893, 655 N.E.2d 5, 7 (1995). Merely because different inferences could be drawn from conflicting evidence does not justify a reviewing court overturning the decision of the Commission. *Berry v. Industrial Comm'n*, 99 Ill. 2d 401, 407, 459 N.E.2d 963, 966 (1984); *Lasley Construction*, 274 Ill. App. 3d at 893, 655 N.E.2d at 8. Only if the findings of the Commission are against the manifest weight of the evidence will the decision be reversed. See *Mendota Township High School v. Industrial Comm'n*, 243 Ill. App. 3d 834, 836-37, 612 N.E.2d 77, 78 (1993). And, in order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894, 896 (1992). In this instance, we cannot say an opposite conclusion is clearly apparent.

■ Prior to the altercation with the service manager on March 15, 1987, claimant generally was in good health. Immediately after the altercation, claimant began experiencing symptoms of wobbling and weakness. Claimant continued to experience problems over the next 36 hours, ultimately resulting in a trip to the hospital where he was diagnosed as having suffered a stroke. Claimant's expert opined the stroke began after the argument and, in fact, was caused by it. While employer's expert found no causal connection between the confrontation and the stroke, he did admit the argument could result in rising blood pressure. Claimant's expert, on the other hand, pointed out that claimant had none of the usual risk factors associated with heart attacks and strokes. He did not smoke or drink and

had no personal or family history of heart attacks or strokes. While claimant apparently had a mild high blood pressure condition, one month prior to the incident, his blood pressure was within normal limits. More importantly, claimant's expert specifically testified claimant's preexisting condition was not of sufficient magnitude to cause any particular imparity prior to the onset of the altercation and illness. As noted many times, a preexisting condition does not preclude a finding of compensability (see *Sears, Roebuck & Co. v. Industrial Comm'n*, 79 Ill. 2d 59, 66, 402 N.E.2d 231, 235 (1980)), nor must a claimant prove some act or phase of his employment was the sole, or even the principal, cause of his injury (see *Lasley Construction*, 274 Ill. App. 3d at 893, 625 N.E.2d at 8). Clearly claimant proved his case. It was then for the Commission to choose between the expert medical opinions. And, in the presence of conflicting medical opinion, the Commission's determination is to be given substantial deference. *Material Service Corp. v. Industrial Comm'n*, 97 Ill. 2d 382, 387, 454 N.E.2d 655, 657 (1983). Under the circumstances presented here, we must uphold the decision of the Commission.

    ■ Employer also finds fault with the Commission's award of permanent total disability when claimant is employed on a part-time basis. Relying on *Smith v. Industrial Comm'n*, 125 Ill. App. 3d 999, 466 N.E.2d 1001 (1984), employer argues proof of total and permanent disability requires evidence that the claimant is unable to perform services except for those for which there is no reasonably stable market. As claimant was working, employer contends claimant failed to show he was unable to make some contribution to the work force sufficient to justify payment of wages. Employer further points out claimant is now a 73-year-old retired person and therefore is not actively in the work force in any event. The record reveals otherwise. Contrary to employer's contention, claimant is not a retired person and certainly was not retired at the time of the incident on March 15, 1987. Claimant did retire in 1985, but was called out of retirement by employer and was successfully performing his job until the confrontation and resulting stroke. Since the stroke, claimant works only two to three days a month and only a few hours per day on an "on-call" basis. In the six months preceding his stroke, claimant earned approximately $42,260 compared to some $15,300 over the four years since his stroke. To this day, claimant continues under the care of his personal physician and remains under medication. He walks with a cane and has permanent weakness on his right side. He also has had to retrofit his home to accommodate his disabilities. The fact he can earn occasional wages or perform certain useful services does not preclude a finding of total permanent

disability. See *E.R. Moore Co. v. Industrial Comm'n*, 71 Ill. 2d 353, 361, 376 N.E.2d 206, 209 (1978). Dr. Greenberg expressed his opinion that claimant was not capable of working given his physical limitations and difficulties. The determination of the extent or permanency of a claimant's medical disability is a question of fact for the Commission. *E.R. Moore Co.*, 71 Ill. 2d at 361, 376 N.E.2d at 209; *Zion-Benton Township High School District 126 v. Industrial Comm'n*, 242 Ill. App. 3d 109, 115, 609 N.E.2d 974, 979 (1993). Here the Commission determined claimant was permanently and totally disabled. Such determination is supported by the record and will not be overturned on appeal.

Affirmed.

McCULLOUGH, P.J., and COLWELL, and HOLDRIDGE, JJ., concur.

JUSTICE RAKOWSKI, dissenting:
For the reasons that follow, I respectfully submit that the Commission's finding that claimant's condition of ill-being was causally related to his employment is against the manifest weight of the evidence.

The majority relies on Dr. Greenberg's conclusion that claimant did not smoke, drink, or have a family history of heart attacks or strokes. While this statement may very well be true, I fail to understand the significance of risk factors where there is clear objective evidence that claimant was at significant risk of stroke. Prior to his stroke, claimant had high blood pressure, a history of hypertension, extensive atherosclerotic changes in his blood vessels, and stenotic vessels. It is beyond question that claimant possessed numerous increased factors for cerebral ischemia.

I also disagree with the Commission's conclusion that claimant's argument with the service manager was an event of such magnitude so as to create a causal relationship to claimant's stroke. Arguments are not uncommon events. They occur in all aspects of daily life and often in an employment setting.

Nor is the conclusion that the argument that supposedly took place was "heated" supported by the evidence. Carl Guido, the service manager whom claimant contends he argued with, testified that he had a good relationship with claimant and that he did not recall any argument with him. Richard Seden, the manager, also testified. He, too, denied any knowledge of the purported verbal altercation between claimant and Guido. Garland Trotter, a co-worker, testified

that he did not witness any argument but that claimant told him he had problems getting a customer's car repaired. Harry Bass, the customer, testified that he witnessed an argument but left before it was concluded. Although the claimant characterizes the argument as "heated," there is no evidence in the record to support such a conclusion.

The occurrence of a heart attack at claimant's work place does not automatically establish that the injury arose out of and in the course of employment. *Illinois Bell Telephone Co. v. Industrial Comm'n*, 35 Ill. 2d 474, 477 (1966). Where the heart disease has progressed so far that any ordinary stress or exertion would have brought on the heart attack, claimant is not entitled to recovery. *Doyle v. Industrial Comm'n*, 86 Ill. 2d 544, 550 (1981). I respectfully submit that this is such a case. In my view, an opposite conclusion is clearly apparent. *Drogos v. Village of Bensenville*, 100 Ill. App. 3d 48, 54 (1981). Accordingly, I would reverse the judgment of the circuit court.