FORD MOTOR COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Warren Schussler, Appellee).

First District (Industrial Commission Division)   No. 1—00—1950WC

Opinion filed March 15, 2001.

Law Offices of James M. Ridge, P.C., of Chicago (Karin K. Connelly, of counsel), for appellant.

Kelly E. Cotter, of Law Offices of Kelly E. Cotter, of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Mary H. Schussler filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) following the death of her husband, Warren J. Schussler (decedent), contending decedent died as a result of his employment with Ford Motor Co., employer. The arbitrator determined decedent's death was causally related to his employment. The Industrial Commission (Commission) affirmed the decision of the arbitrator, and the circuit court of Cook County confirmed the decision of the Commission. Employer appeals contending the finding of causal connection between decedent's death and his employment is against the manifest weight of the evidence. We affirm.

On July 14, 1987, a fire broke out on the roof of the paint building at employer's plant. The fire was in an oven where an "e coat," an anti-corrosion process, is applied to a car. It was part of decedent's job duties to assist in putting out the fire. Decedent and a coworker, James

Porte, using a 1½- or 2-inch fire hose, put water on the fire some 20 to 30 minutes before it was extinguished. They were within 100 feet or less of the fire and close enough to feel the heat. No one was wearing protective or respiratory masks. Porte testified there was smoke involved with the fire as well as discharged "clunkers," pieces of burnt-out substance, being scattered on the roof. After the fire was out, decedent returned to his shift.

Around noon on July 14 after decedent had returned home from work, a coworker of decedent's wife noticed decedent looked pale and his breathing was labored. She testified decedent kept gasping for air and taking short breaths. A next-door neighbor saw decedent in his back yard in the early afternoon and heard him coughing. She asked him if he had started smoking again because he used to cough that way when he smoked. Decedent had stopped smoking a year earlier and had been in good health prior to the fire. Decedent's wife testified decedent's condition continued to deteriorate throughout the day. He was having trouble breathing and was coughing up black phlegm. Decedent's wife called their family physician, Dr. Rocke, and got a prescription to help decedent. The medicine did not work and decedent's condition continued to deteriorate. Decedent went to the hospital that night with complaints of abdominal discomfort, chest pain and back pain. He was diagnosed with gastritis and diabetes and was given another prescription and discharged. A chest X ray taken at the hospital revealed a mild chronic bronchitic change. Sodium, potassium chloride and carbon dioxide levels all were within normal ranges. Decedent called in sick to work the next day. In the early morning hours of July 18, decedent's wife took decedent back to the hospital. Decedent was diagnosed at that time with bronchitis and pneumonia. One of the consulting physicians noted in his report that decedent was in significant respiratory distress. Later that day decedent suffered a massive heart attack and died. Decedent was 44 years old at the time of his death. The death certificate listed decedent's cause of death as cardiac arrest as a result of cardiogenic shock. No autopsy was performed.

Decedent's expert, Dr. Nathaniel Greenberg, disagreed with the diagnosis on the death certificate and testified decedent's death was a direct outgrowth of fighting the fire at employer's plant. He opined that the fume inhalation at work coupled with his past smoking and diabetes weakened his local pulmonary resistance to infection. He further testified that the rapidity of decedent's deterioration would be most unusual for a man of his age in the absence of circumstances that would markedly impair his resistance to infection. Dr. Greenberg also testified the death certificate findings were not supported by the medical records. Decedent underwent an electrocardiogram on July

15, and the results were normal. When he returned to the hospital on the 18th, the test revealed minimal nonspecific changes. Dr. Greenberg further pointed out that decedent's CPK readings were normal. According to Dr. Greenberg, CPK is one of the classic enzymes for myocardial infarctions. He believed any cardiac manifestations were a consequent of decedent's severe lung problems and lowered oxygen.

Employer's expert, Dr. David Cugell, opined decedent's course in the hospital was typical for someone with a massive, fatal heart attack, especially given his history of being a smoker and obese and having an elevated blood sugar. He concluded decedent's death was unrelated to any events that occurred at employer's plant. He further pointed out that, in his opinion, exposure to irritant fumes or smoke produce immediate symptoms which tend to be most severe shortly following exposure. He saw no evidence of any immediate symptoms in decedent's case.

Both the arbitrator and Commission relied upon Dr. Greenberg's opinion in finding a causal connection between decedent's work of fighting a fire on July 14, 1987, and his sudden death on July 18, 1987. The arbitrator specifically pointed out decedent was in good health prior to fighting the fire and began to manifest conditions of ill-being shortly after the fire.

■ It is the province of the Commission to decide questions of fact and causation, to judge the credibility of witnesses and to resolve conflicting medical evidence. *Steve Foley Cadillac/Hanley Dawson v. Industrial Comm'n*, 283 Ill. App. 3d 607, 610, 670 N.E.2d 885, 887 (1996). Merely because different inferences could be drawn from the evidence does not justify a reviewing court overturning the decision of the Commission. *Berry v. Industrial Comm'n*, 99 Ill. 2d 401, 407, 459 N.E.2d 963, 966 (1984). Only if the findings of the Commission are against the manifest weight of the evidence will the decision be reversed, and, in order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Interlake, Inc. v. Industrial Comm'n*, 95 Ill. 2d 181, 189, 447 N.E.2d 339, 343 (1983); *Steve Foley Cadillac*, 283 Ill. App. 3d at 610, 670 N.E.2d at 887. There was ample evidence here from which the Commission could find that decedent died from problems arising from fighting the fire at employer's plant. Given the circumstances presented, we cannot say such a conclusion is against the manifest weight of the evidence.

■ Generally speaking, a death is compensable under the Act if the decedent's employment was a causative factor in the death. The employment need not be the sole, or even principal, causative factor. *Sears, Roebuck & Co. v. Industrial Comm'n*, 79 Ill. 2d 59, 66, 402 N.E.2d 231, 235 (1980). See also *Bruno v. Industrial Comm'n*, 31 Ill.

2d 447, 449, 202 N.E.2d 13, 15 (1964). Additionally, the fact that death does not occur while the employee is actually engaged in the performance of his job duties does not preclude a finding that the employment was a causative factor in the death. *Sears*, 79 Ill. 2d at 66, 402 N.E.2d at 235. Nor does the fact that the employee had a preexisting condition, even though the same result may not have occurred had the employee been in normal health. See *County of Cook v. Industrial Comm'n*, 69 Ill. 2d 10, 17, 370 N.E.2d 520, 523 (1977); *Steve Foley Cadillac*, 283 Ill. App. 3d at 611, 670 N.E.2d at 888.

■ Prior to the firefighting episode, decedent generally was in good health. Shortly after fighting the fire, upon his return home, decedent was observed to be gasping, short of breath and coughing up black phlegm. Proof of an employee's state of health prior to the time of injury and the change immediately following the injury serves to establish that the impaired condition resulted from the injury. See *Old Ben Coal Co. v. Industrial Comm'n*, 198 Ill. App. 3d 485, 492, 555 N.E.2d 1201, 1206 (1990). It is true decedent did not directly complain of breathing problems upon his first admission to the hospital, but the medical records reveal decedent was suffering from bronchial problems. Efforts at conservative treatment failed, and decedent's condition steadily deteriorated. When he was admitted to the hospital again, decedent was noted to be suffering from bronchitis and pneumonia and was in significant respiratory distress. Decedent died shortly thereafter. The death certificate listed the cause of death as heart failure, but according to the opinions of Dr. Greenberg, decedent showed none of the signs of suffering from a heart attack upon being admitted to the hospital. He specifically pointed to the fact that decedent's first electrocardiogram was normal and the second test conducted on July 18 revealed only minimal nonspecific changes. Dr. Greenberg further pointed out that decedent's CPK enzyme readings were normal. He believed any cardiac manifestations were a consequence of the lowered oxygen and severe lung problems decedent was experiencing. As Dr. Greenberg stated, decedent probably did experience heart failure because that happens to everyone who dies. Dr. Greenberg unequivocally testified decedent died as a result of fighting the fire at employer's plant. He opined that decedent's history of smoking and mild diabetes plus the fume inhalation at work weakened his resistance to infection and resulted in the overwhelming pneumonia which killed him. Both the arbitrator and Commission accepted Dr. Greenberg's opinions given the chain of events between decedent's fighting the fire and his death. We cannot say such a conclusion is unreasonable or against the manifest weight of the evidence in this instance. Claimant is not required to negate every other possible cause

of death other than an injury arising out of the employment as long as there is competent evidence upon which to base a legitimate inference that death was from that injury arising out of the employment. See *Bruno*, 31 Ill. 2d at 449, 202 N.E.2d at 15. Such is the case here. As the Commission's determination is entitled to substantial deference (see *Steve Foley Cadillac*, 283 Ill. App. 3d at 611, 670 N.E.2d at 888), we affirm the finding that decedent's death was causally related to his employment.

For the aforementioned reasons, the decision of the Commission, as confirmed by the circuit court of Cook County, is affirmed.

Affirmed.

McCULLOUGH, P.J., and HOFFMAN, O'MALLEY, and HOLDRIDGE, JJ., concur.