EARL REYNOLDS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (United Design and Engineering Company, Appellee).

Fifth District (Industrial Commission Division)   No. 5—86—0145WC

Opinion filed December 29, 1986.

Serkland & Muelhausen, of Chicago (James C. Serkland, of counsel), for appellant.

Edward M. Vokoun, of Evans & Dixon, of St. Louis, Missouri, for appellee.

JUSTICE BARRY delivered the opinion of the Court:

The circuit court confirmed the Industrial Commission's compensation award to the petitioner, Earl Reynolds, for 35% permanent disability to his right leg (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(e)(12)). The court further confirmed the Commission's determination that the petitioner's work for the respondent, United Design and Engineering Company, was seasonal. (Ill. Rev. Stat. 1979, ch. 48, par. 138.10(e).) The petitioner appeals. We affirm.

On August 5, 1980, the 60-year-old petitioner injured his right knee while installing pipe in a ditch. On November 4, 1980, Dr. David Thomas performed arthroscopic surgery, which included cleaning, debriding, shaving, and trimming on the knee. Following surgery, the petitioner underwent Cybex machine therapy three times a week from May 26, 1981, through September of 1981. He received no medical treatment thereafter. In December of 1981, Dr. Thomas released him to do light work. While the petitioner continued working up until the surgery, he has not worked since.

The petitioner first argues that the Commission should have awarded permanent total disability benefits under section 8(f) of the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(f)) because he is unable to perform his trade duties and there is no other work available given his physical limitations.

Whether an employee has sustained an injury which renders him permanently and totally disabled is a question of fact to be resolved by the Industrial Commission. It is the function of the Commis-

sion to resolve conflicting evidence, to draw reasonable inferences from the facts, and to conclude from a proper evaluation of all the evidence whether the employee is permanently and totally disabled. (*Goldblatt Brothers, Inc. v. Industrial Com.* (1979), 78 Ill. 2d 62, 397 N.E.2d 1387.) The Commission's decision will not be set aside on review unless it is against the manifest weight of the evidence. (*Flores v. Industrial Com.* (1981), 87 Ill. 2d 48, 429 N.E.2d 479.) A claimant has the burden to prove that no employment is available for a person with his disability unless he is obviously unemployable or unless there is medical evidence to support a claim of total disability. (*Intercraft Industries Corp. v. Industrial Com.* (1983), 95 Ill. 2d 297, 447 N.E.2d 807.) If the employee can establish that although he is not altogether incapacitated for work, he is so handicapped that he cannot be employed regularly in a well-known branch of the labor market, the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the employee. (*Boyd v. Industrial Com.* (1984), 127 Ill. App. 3d 1023, 469 N.E.2d 1115.) An employee is not entitled to total and permanent disability compensation if he is qualified for and capable of obtaining gainful employment without serious risk to his health or life, even if he does not obtain such work. *A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, 397 N.E.2d 804.

In the instant case, the evidence offered by the parties is conflicting. Micheleen Maher, a certified rehabilitation counselor who worked with the petitioner for over a year, testified that the petitioner's skills and physical capabilities enabled him to work in property management, construction inspecting and estimating, small engine and motorcycle sales and repair, and maintenance. She had identified 35 employers in the area who offered such jobs. When Maher contacted the petitioner about these job opportunities, he told her he was not interested and that he had no financial need to go to work since he had enough income from social security and a union pension. The petitioner did go on some interviews, but, according to Maher, displayed little enthusiasm to potential employers. Maher also observed that the bad economy affected the petitioner's employment prospects.

Dr. Barry Fischer, who was certified in occupational medicine, evaluated the petitioner twice at the request of the petitioner's attorney. On January 9, 1982, he found that the petitioner walked with a limp, favoring his right lower leg. The petitioner had a tenderness on palpation and pressure over the right knee. Flexion of the injured knee was 120 degrees versus 145 degrees in the left knee. There was no evidence of medial or lateral instability. X rays showed a bony irregularity on the posterior aspect of the right patella and a loose body in the right knee

joint. Upon reexamination on December 18, 1982, Dr. Fischer concluded that the petitioner had a permanent condition preventing him from working as a plumber or pipefitter. According to Dr. Fischer, the petitioner could not walk on irregular ground, stand or walk for long periods, climb ladders, or ride or push a motorcycle. Dr. Fischer testified that the petitioner could do only sedentary work. With the petitioner's ability to read blueprints and supervise construction jobs and his knowledge of the plumbing industry, Dr. Fischer felt that his lack of a formal education would not matter much to a potential employer.

On March 30, 1982, the petitioner was examined, at the respondent's request, by Dr. Alan Morris, a board-certified orthopedic surgeon. Dr. Morris found that the petitioner walked abnormally, had full extension of the right knee with flexion to 125 degrees, and had disuse atrophy of the bone about the distal femur and proximal tibia in the right knee and a slight bowing of both knees. No arthritic change was seen. Dr. Morris concluded that the petitioner could not work in a job where he had to climb, crawl, or walk distances. He did not think that the petitioner would be able to be on his feet for a constant eight-hour day. He could do work that would allow periodic standing, periodic walking for short distances, and sitting. He could occasionally lift items weighing 30 to 50 pounds, although he could not on a regular basis carry such items a distance of 10 to 20 feet over irregular terrain.

Dr. Morris re-examined the petitioner on December 15, 1983. The petitioner had a one-half inch atrophy in his right thigh and calf and equal calf circumferences. The right leg had no swelling. Both legs were of equal length. Gentle palpation of the right knee caused discomfort to the petitioner. The petitioner had full extension and 100 degrees flexion of his right knee. There was no medial, lateral, or rotary instability. He had a negative Lachman's test. An X ray revealed degenerative changes of the medial femoral condyle in the right knee. Dr. Morris' diagnosis was arthalgia of the right knee. He concluded that the petitioner could work in a supervisory position.

Charles Basye, a private investigator hired by the respondent, observed and filmed the petitioner's activities on May 4, 1983; May 31, 1983; June 1, 1983; and June 16, 1983. He saw the petitioner drive his car, ride a motorcycle, use an electric lawn trimmer, start and cut his lawn with a push power mower, remove the grass catcher, and wash his car, all without a limp. The petitioner was also shown with his right leg propped up on his mower as he repeatedly tried to start it. Basye also watched the petitioner move his trash can from his garage to his curb and paint his porch and a planter in crouched and sitting positions. In one segment of the film, the petitioner drove to the Ohio River and

used a long-handled shovel to fill five-gallon buckets with dirt. He also carried the half-filled buckets to his trunk, drove to another residence, unloaded the buckets, and filled potholes. He made several such trips.

Dominic Gentile, the business agent for the plumbers and pipefitters union, testified that there was no job in the trade that did not require repeated squatting and kneeling. In short, given the petitioner's physical limitations, there were no jobs, including foreman and general foreman jobs, to which Gentile could assign him.

The petitioner testified that he had tried to find a job, but that not one of the places recommended by the respondent's rehabilitation specialist had an available job. He denied telling any employers he was only interviewing because he had to do so. He denied being able to repair motorcycles and small motors. He admitted that he had not applied for any jobs since Maher quit working with him.

■ While, as noted, there is conflict in the record, there was sufficient evidence upon which the Commission could base its decision that the petitioner was capable of obtaining gainful employment without serious risk to his health or life. Further, we find that the petitioner did not meet his initial burden of proof, as set forth in *Boyd v. Industrial Com.* (1984), 127 Ill. App. 3d 1023, 469 N.E.2d 1115, necessary to shift the burden to the respondent. Accordingly, we find that the Commission's decision was not against the manifest weight of the evidence.

Second, the petitioner argues that the Industrial Commission erred in concluding that his work was seasonal and in thus calculating his compensation pursuant to section 10(e) (Ill. Rev. Stat. 1979, ch. 48, par. 138.10(e)) of the Act, rather than pursuant to section 10(c) (Ill. Rev. Stat. 1979, ch. 48, par. 138.10(c)), which applies to nonseasonal, short-term employees.

The respondent first responds that the petitioner waived this issue because he did not raise it before the Commission. The respondent's waiver argument relies on a review hearing form and a notice of predecision, neither of which is in the administrative record filed with the circuit court. In an attempt to remedy this, the respondent has filed a motion to amend the administrative record. We took this motion and the petitioner's objection thereto with the case.

■ Errors in the administrative record should be corrected prior to review in the circuit court. (See *Caterpillar Tractor Co. v. Industrial Com.* (1980), 82 Ill. 2d 1, 411 N.E.2d 271.) Accordingly, we deny the respondent's motion to amend the record.

Turning to the merits of the petitioner's argument, we first observe that it is the function of the Industrial Commission to resolve factual questions; its findings of fact will not be set aside unless they

are contrary to the manifest weight of the evidence. (*Friddle v. Industrial Com.* (1982), 92 Ill. 2d 39, 440 N.E.2d 865.) While we are aware of no cases discussing the nature of plumbers' and pipefitters' work with regard to applying section 10 of the Act, in *Rambert v. Industrial Com.* (1985), 133 Ill. App. 3d 895, 477 N.E.2d 1364, the court stated that one aim of section 10(e) (Ill. Rev. Stat. 1979, ch. 48, par. 138.10(e)) was to provide an earnings base for seasonal employees such as construction workers. Noting that section 10(e) had been applied to construction workers and roof slaters, it applied the section to iron workers.

In the instant case, Dominic Gentile testified that the petitioner worked more hours than other workers because he was in demand due to his good work attitude. In 1979, the petitioner had worked 2,090 hours. As of August 1980, he had worked 1,274 hours. From August of 1979 to June of 1980, the petitioner earned no less than $14.33 an hour plus $1.00 per hour for general foreman's pay, for a total of $15.33 an hour in taxable income. From June of 1980 until the accident, during which time he worked for the respondent, his hourly rate was $14.88. Gentile stated that pipefitters traditionally worked longer hours than most people and that weather problems very seldom affected working hours.

Leonard Hoffman, personnel manager for the respondent, testified that the petitioner was first employed by the respondent on June 11, 1980, at an hourly rate of $14.35 an hour. This rate increased to $14.95 an hour July 1, 1980. Hoffman stated that while the respondent operated all the working days of the year, it did not employ plumbers and pipefitters for more than 200 days a year.

While the petitioner offered evidence concerning the number of hours he had worked for past employers, he did not refute the respondent's contention that its pipefitters were seasonal. Accordingly, with reference to the analysis in *Friddle v. Industrial Com.* (1982), 92 Ill. 2d 39, 440 N.E.2d 865, the Commission's finding that petitioner was a seasonal worker was not contrary to the manifest weight of the evidence.

The judgment of the circuit court of Hardin County is affirmed.

Affirmed.

McNAMARA, WOODWARD, McCULLOUGH, and KASSERMAN, JJ., concur.