ROBERT G. YAEGER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Baldwin Associates, Appellee).

Fourth District (Industrial Commission Division)  No. 4—91—0543WC

Opinion filed July 15, 1992.—Rehearing denied September 16, 1992.

R. Wayne Harvey, of Harvey & Stuckel, Chartered, of Peoria, for appellant.

Robert L. Mueller, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The appellant, Robert G. Yaeger (the claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.*) contending he suffered injuries arising out of his employment with the appellee, Baldwin Associates (the employer). The circuit court twice reversed and remanded the decision of the Industrial Commission (Commission). The circuit court subsequently confirmed the third decision of the Commission. The claimant now brings the instant appeal contending the circuit court erred in setting aside the original decision of the Commission.

The record shows that on March 20, 1981, the claimant was employed by the employer as a pipe fitter. On that date, the claimant was injured when he fell while descending from scaffolding at a worksite. The claimant fell approximately six feet, landing on his back. The claimant was treated at the site with an ice pack applied to his back. The claimant then drove either home or directly to his family physician.

Later in the day, the claimant was examined by Dr. Larry Patton. The claimant complained of moderately severe pain in the mid and upper right lumbar region of his back. X rays were taken which revealed extensive hypertrophic osteoarthritis of the lumbar spine, and a possible fracture of the arthritic bridge between the L1 and L2 lumbar vertebrae. The claimant was given Tylenol with codeine and advised to use ice. The claimant testified before the arbitrator that he was prescribed bed rest. The claimant returned a few days later complaining of pain in the right foot and ankle. X rays revealed no fracture, and Patton opined the claimant suffered a sprain.

The claimant testified he remained in bed for over two weeks following the incident. Approximately two weeks after the incident, the claimant testified he developed nausea and dizziness. On May 2, 1981, the claimant was treated by Patton for a laceration above his left eyebrow. The claimant related that while showering he became dizzy and fell, striking his head on a toilet. Although Patton had seen the claimant seven times since the fall at work, this was the first time the claimant had related an episode of vertigo since the incident on March 20, 1981. Patton testified the claimant had experienced prior episodes of vertigo.

Patton surmised the claimant might have struck his head in the fall at work. At the time Patton was concerned the claimant might be suffering a subdural hematoma or even a cerebral concussion. Therefore, Patton made arrangements with Dr. Thomas Clark to have the claimant admitted to Methodist Hospital for an evaluation.

The claimant testified he was examined by Drs. Clark and Kalyanaraman in mid-May 1981. The doctors' report indicates the CAT scan of the claimant's brain was normal, as were the results of the electrocardiogram. They found there was no determinable cause for the claimant's syncopal episodes. Dr. Kalyanaraman felt there was no evidence of subdural hematoma. The doctors believed the claimant could return to ground-level work. The claimant testified he and Dr. Patton were "dissatisfied" with the report and he no longer sought treatment from Clark and Kalyanaraman.

Patton testified he continued treating the claimant during the summer of 1981. The claimant continued to complain of dizziness when looking up or bending over. The claimant experienced shaking in his hands, which later involved his head and even his voice. Patton testified he had been treating the claimant for hypertension for some time. The injury to the claimant's ankle and the bruising of his back eventually resolved, although the claimant did develop cellulitis and phlebitis in the right leg.

The claimant was examined by Dr. Arthur Sweet on June 15, 1981. Sweet found the claimant's complaints could not be "discerned" from the examination. He believed the claimant could do some types of light work and that he was no more than 5% disabled.

At the time of his deposition, Patton had not released the claimant to return to work because of the claimant's vertigo and tremors. Patton believed that although the tremors suffered by the claimant were most likely an inherited condition, the tremors could have been aggravated by the fall. Regarding the vertigo, Patton conceded that the negative CAT scan ruled out a subdural hematoma. However, Patton believed the vertigo could be related to a possible cerebral contusion. On cross-examination, Patton conceded there was some evidence of vertigo dating from a sinus infection in 1978.

At Patton's recommendation, the claimant was examined by Dr. Douglas Collins, a neurologist, on September 29, 1981. The claimant was also hospitalized in early October of 1981 so that Collins could have certain tests performed on the claimant. The tests were essentially normal; however, based on the subjective complaints of the claimant and the history given by the claimant, Collins opined the claimant could not return to construction work. He opined the claimant suffered from post-

concussion syndrome, hemorrhagic labyrinthitis and cerebral infarct as a direct result of his fall at work.

The claimant was examined by Dr. Simon Horenstein on December 9, 1981. In a letter, Horenstein opined the claimant suffered from disease of the acoustic and vestibular apparatus which had caused recurrent episodes of vertigo since 1978. Horenstein found a hemorrhage highly unlikely given the type of hearing loss complained of by the claimant. Horenstein stated in the letter, "It is highly likely that vertigo of vestibular origin accounts for the intermittent attacks, the relatively normal intervening examinations, the sensitivity to head motion and postural change and may well have been responsible for his fall from the scaffold." He believed the claimant could perform light to moderate physical work which did not require him to be on ladders or scaffolding.

The arbitrator's decision was filed on March 4, 1983. The arbitrator found the claimant had suffered accidental injuries arising out of and in the course of his employment. As a result, the arbitrator found the claimant was permanently and totally disabled. Specifically, the arbitrator found the claimant suffered a concussion in the fall. The arbitrator based this finding on the claimant's testimony that immediately after the fall he experienced some lapse of awareness compatible with a blow to the head, and subsequent dizziness. The arbitrator noted the claimant had suffered dizzy spells before the accident; however, the arbitrator stated there had been only two previous incidents of dizziness in two years. The arbitrator found the fall aggravated the arthritic condition of the claimant's spine. Among other findings, the arbitrator found the claimant's hypertension and tremors were not casually related to the fall, with the possible exception that the concussion made the tremors worse.

The claimant was found to be entitled to $282.25 per week for life pursuant to section 8(f) of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 138.8(f)). In addition, the employer was to pay $5,834.28 in medical expenses.

Further evidence was taken by the Commission on September 25, 1984. The claimant testified that since the hearing before the arbitrator, he continued to have dizzy spells, back problems and shakiness in his hands. He testified he had attempted some soldering; however, he found his hands shook too severely. The claimant stated he had not sought any type of employment.

The claimant presented the medical report of Dr. Dean Gravlin. Gravlin examined the claimant on March 8, 1984. His diagnosis was that the claimant suffered from near syncope, most likely post-traumatic.

Gravlin opined the claimant could not be employed in any job requiring working at heights or with heavy equipment.

The employer offered a report by Dr. Horenstein dated January 17, 1984. Horenstein had examined the claimant a second time on August 8, 1983. The examination and review of test results confirmed his earlier opinion. He stated he could not understand the diagnosis of cerebral concussion when there was no evidence of a head injury. However, Horenstein agreed the claimant could not return to construction work.

The Commission entered its decision on May 16, 1986. The Commission increased the award for medical expenses and increased the rate of weekly compensation to $337.03 per week. In all other respects the Commission affirmed the arbitrator's decision.

The claimant sought review in the circuit court contending the Commission erred in setting the weekly rate of compensation. In its reply to the claimant's assertion, the employer raised the contention that the Commission's decision was against the manifest weight of the evidence. The employer did not seek cross-summons to raise the manifest weight issue.

The circuit court found the Commission's decision that the claimant was totally and permanently disabled was against the manifest weight of the evidence. The court found the evidence showed the claimant was not unemployable, and that he had failed to prove there was no employment available for a person with his disabilities.

On remand, the Commission entered a new decision on November 29, 1988. The Commission stated it considered the entire record and pursuant to the direction of the circuit court was modifying the earlier award. The Commission found the claimant was temporarily totally disabled for a period of 183$\frac{1}{7}$ weeks from March 21, 1981, to September 25, 1984 (the date of the hearing before the Commission). The Commission also found the claimant was permanently disabled to the extent of 95% of a person as a whole. The Commission noted the medical opinions were conflicting. The Commission also noted the circuit court's observation that the claimant obviously had considerable disabilities. The Commission noted the circuit court's finding that the claimant had failed to sustain his burden of proof that he was totally and permanently disabled. The rate of compensation remained at $337.03 per week.

The employer sought review in the circuit court. Again, the circuit court reversed and remanded to the Commission. The circuit court found the claimant had failed to prove he was disabled to the extent of 95%, and thus the Commission's decision was against the manifest weight of the evidence. The court found there was no evidence the claimant was unable to work at ground level as a plumber. The court

found the Commission's determination that the claimant was temporarily totally disabled through September 25, 1984, was also against the manifest weight of the evidence.

On remand the Commission found the claimant was temporarily totally disabled for 12⁶/₇ weeks from March 21, 1981, through June 15, 1981, and from October 5, 1981 to October 9, 1981. The Commission also found the claimant was disabled to the extent of 45% of a person as a whole. The Commission also reduced the amount of the award for medical expenses.

The petitioner sought review in the circuit court. The circuit court docket entry states in pertinent part: "Pltf requests Court affirm the decision of the IC and presents no further arguments. Counsel for deft request court affirm decision of IC and presents no further arguments. Decision of IC dated Jan. 28, 1991 affirmed." The claimant now appeals to this court.

Initially, the employer has moved to dismiss the appeal, contending the most recent disposition in the circuit court was a consent order and therefore unappealable. The employer argues the claimant's request to the circuit court to confirm with no further argument and the employer's concurrence constituted a consent decree.

■ Typically a reviewing court will not review a consent decree because a decree entered by consent is no more than a court's recording of an agreement reached by the parties in settlement of a dispute or claim and is not a judicial determination of their rights. *People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1985), 106 Ill. 2d 1, 476 N.E.2d 409.

■ In the instant case, we find the judgment of the circuit court was not entered pursuant to the consent or agreement of the parties. The docket entry indicates the parties waived further argument and that they each requested the Commission's decision be confirmed. However, this does not indicate the judgment of the circuit court was entered pursuant to agreement of the parties. There is no contention the parties made their respective requests to the circuit court pursuant to an agreement. The employer's motion is therefore denied.

On the merits, the claimant contends the circuit court erred in finding the original decision of the Commission was against the manifest weight of the evidence.

■ ■ For purposes of section 8(f) of the Act, a person is totally disabled when he cannot perform any services except those for which no reasonably stable labor market exists; conversely, if an employee is qualified for and capable of obtaining gainful employment without seriously endangering health or life, such employee is not totally and permanently

disabled. (*E.R. Moore Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 353, 376 N.E.2d 206.) A claimant has the burden to prove that no employment is available for a person with his disability unless he is obviously unemployable or unless there is medical evidence to support a claim of total disability. (*Reynolds v. Industrial Comm'n* (1986), 151 Ill. App. 3d 695, 502 N.E.2d 1178.) It is the province of the Commission to resolve any conflicts in the medical evidence and to decide which testimony to accept. (*International Harvester Co. v. Industrial Comm'n* (1988), 169 Ill. App. 3d 809, 523 N.E.2d 1303.) Causation and the permanency and degree of disability are issues of fact for the Commission, and its award will be set aside only if it is against the manifest weight of the evidence. *Illinois Mutual Insurance Co. v. Industrial Comm'n* (1990), 201 Ill. App. 3d 1018, 559 N.E.2d 1019.

In the instant case, the medical evidence was conflicting. At the time of the hearing before the Commission, Dr. Patton had not released the claimant to return to work because he suffered from tremors and vertigo. Dr. Collins opined the claimant's condition would prevent him from returning to construction work. On the other hand several of the doctors who treated or examined the claimant were of the opinion he could return to employment involving ground-level activities.

The claimant testified before the Commission that he had attempted to do some soldering; however, the tremors in his hands made such tasks impossible.

Viewing the record as a whole, we find the Commission's decision was not against the manifest weight of the evidence. It was for the Commission, based on its expertise in the area of workers' compensation, to decide the conflicting factual issues. The circuit court erred in substituting its judgment for that of the Commission's.

For the foregoing reasons, the judgment of the circuit court of De Witt County is reversed and the initial decision of the Commission is reinstated and affirmed.

Reversed; award reinstated.

McCULLOUGH, P.J., and WOODWARD, H. LEWIS, and RAKOWSKI, JJ., concur.