LITTLE COMPANY OF MARY HOSPITAL, Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.* (Julia Velasco, Appellee).

First District (Industrial Commission Division) No. 1—92—2242WC

Opinion filed November 29, 1993.

McCULLOUGH, J., specially concurring.

Dowd & Dowd, Ltd., of Chicago (Kenneth Gurber and Michael G. Patrizio, of counsel), for appellant.

Marszalek & Marszalek, of Chicago (Steven A. Globis, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The employee, Julia Velasco (claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) against Little Company of Mary Hospital (employer) alleging that she sustained a work-related injury. Following a hearing, the claimant agreed to withdraw her section 19(b) petition because of the employer's agreement that it would advance six months of temporary total disability (TTD) as an advance against permanency or TTD and payment of outstanding medical expenses. At a subsequent hearing six months later, claimant requested penalties because the advance was not made. The arbitrator found that: (1) the claimant was entitled to TTD benefits; (2) the claimant was permanently partially disabled (PPD) to the extent of 40% of a person under section 8(d)(2); (3) there was a causal connection between the incident of June 30, 1982, and the claimant's present condition of ill-being; and (4) the employer's delay in payment was intentional and frivolous. Penalties were assessed in the amount of 50% of the TTD award pursuant to section 19(k). The arbitrator also awarded penalties under section 19(l) and attorney fees under section 16.

Upon review to the Industrial Commission (Commission), the employer delivered a check for $10,000 as payment for six months of TTD. The Commission affirmed and modified. The Commission found the employer to be entitled to a credit for compensation paid, that the claimant was entitled to receive penalties under section 19(k), attorney fees under section 16, and additional medical expenses. The circuit court confirmed.

We affirm.

The claimant was employed as a housekeeper for the employer for about four years. She was injured on June 30, 1982, while trying to push a broken electric bed onto an elevator. She felt a pulling, pinching, burning pain in her left lower back and sought medical treatment immediately. Rest and physical therapy were prescribed. She returned to her regular work duties on August 15, 1982, but left work again on August 17, 1982, and returned for medical help. Physical therapy was prescribed again. An EMG, a CAT scan, a myelogram, and a roentgenogram of the spinal cord were performed.

She saw Dr. Bosch in December 1982. He admitted her to the hospital in January 1983 where she stayed for nine days. She was given a diskogram, a roentgenogram of an intervertebral disk, and underwent chemonucleolysis (a disk is injected in an effort to dissolve it). Dr. Bosch diagnosed a herniated nucleus pulposus at L4-L5 and continued to treat claimant until January 1984.

In June 1983, at the employer's request, she saw Dr. Reider. Dr.

Reider noted that her condition prevented her from doing manual labor, but not sedentary work. He recommended a conservative exercise program.

The claimant began treatment with Dr. Medina in January 1984. He admitted her to the hospital in March where she stayed for five days. Upon her discharge, she underwent physical therapy for four months. On October 30, 1985, he released her to work as of November 4, 1985, with no restrictions.

Claimant worked at her regular job from December 2, 1985, until March 16, 1987. On March 20, 1987, Dr. Medina admitted her to the hospital where she underwent an EMG, CAT scan, and therapy. Dr. Medina diagnosed her with lumbosacral radiculopathy and discharged her.

In April 1987 claimant began treatment with Dr. Smith. In May 1987, he admitted claimant to the hospital for a myelogram. In June 1987, he performed lumbar fusion surgery. The claimant was released to light duty as of May 1, 1988.

Claimant returned to light duty May 1, 1988. She has continuing problems with her back.

The employer raises two issues on appeal: (1) whether the imposition of penalties for 50% of the entire TTD award was excessive and should be reduced; and (2) whether the Commission's finding of causal connection between the accident of June 30, 1982, and the subsequent surgery in June 1987 is against the manifest weight of the evidence.

I

█ Section 19(k) states:

"In case where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay, then the Commission may award compensation additional to that otherwise payable under this Act equal to 50% of the *amount payable at the time of such award.* Failure to pay compensation in accordance with the provisions of Section 8, paragraph (b) of this Act, shall be considered unreasonable delay." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(k).)

The question of whether section 19(k) penalties are to be calculated on the entire amount of the award or only that part that remains unpaid at the time of the penalty hearing was squarely addressed in *Moore v. Industrial Comm'n* (1989), 188 Ill. App. 3d 31, 543 N.E.2d 1062.

In *Moore,* after awarding TTD and PPD the arbitrator found that the employer was entitled to a credit for an amount previously paid to claimant. Upon review to the Commission, the employer attempted for the first time to obtain an additional credit for another previous payment. The Commission rejected this claim and affirmed the arbitrator's decision. Because the employer did not pay claimant the amount it had attempted to claim as a credit before the Commission, the claimant filed a petition for penalties under section 19(k) and section 16. The Commission granted an award equal to 50% of the entire original PPD award. The circuit court reduced the penalty so that the amount represented 50% of the amount of the PPD compensation which remained unpaid by the employer.

In reversing the circuit court's decision to apply the penalty to only that portion of PPD which remained unpaid, the *Moore* court adopted Professor Larson's position that " 'once a penalty is imposed for failure to pay a type of benefit, the penalty is calculated on the entire amount of that type of benefits, including amounts which had been paid before the occurrence of the unreasonable delay.' " *(Moore,* 188 Ill. App. 3d at 36, quoting 3 A. Larson, Workmen's Compensation § 83.41(d) (1989).) The *Moore* court also pointed out that if the penalties were assessed on only the unpaid balance at the time of the penalty hearing, the claimant would be awarded nothing if an employer intentionally underpaid a benefit award, forced a claimant to seek penalties, but, prior to the hearing for penalties, paid the remainder of the award.

In an attempt to distinguish *Moore,* the employer *sub judice* points out that when it agreed to advance TTD, a determination had not been made as to liability. As such, according to the employer, it did not ignore a Commission award as was the case in *Moore.* The employer characterizes the agreement as a contract between the parties.

We find the argument to be without merit. We first note that section 19(k) applies to "any unreasonable or vexatious delay of payment or intentional underpayment of compensation *** *by the one liable to pay the compensation.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(k).) As we read the statute, no distinction is made as to whether the liability to pay compensation is imposed by a Commission award or results from a contract between the parties.

Moreover, the absence of an arbitration award, which the employer argues is necessary for section 19(k) to attach, was because the employer agreed to pay six months' TTD in exchange for the withdrawal of claimant's section 19(b) petition. Accordingly, we judge that the rule set forth in *Moore* (to apply section 19(k) penalties to

the entire amount of compensation due at the time of the penalty hearing) applies whether the liability to pay results from a contract or an award.

The employer also argues that the failure to pay the advance was not an intentional refusal to pay but rather the result of an administrative error and that the decision to stop TTD was made in good faith because Dr. Medina released claimant to return to work without restrictions as of November 4, 1985. If an employer delays paying compensation, it has the burden of showing that it had a reasonable belief that the delay was justified. (*Continental Distributing Co. v. Industrial Comm'n* (1983), 98 Ill. 2d 407, 414, 456 N.E.2d 847.) The Commission's determination of whether the employer acted reasonably in delaying or denying compensation will not be disturbed on review unless it is against the manifest weight of the evidence. *McKay Plating Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 198, 209, 437 N.E.2d 615.

■ *Sub judice*, the tender of the $10,000 check occurred on July 18, 1989, which was 448 days from the date it agreed to pay the six months of TTD, 263 days from the date the employer acknowledged the delay in payment, and 125 days from the date of the arbitration award of March 13, 1989. The award of March 13, 1989, found that the claimant was entitled to TTD benefits during the period in dispute and that the employer's delay in payment was unreasonable. Further, while it is true that Dr. Medina released claimant to work without restrictions in November 1985, he readmitted her to the hospital in March 1987 and diagnosed her with lumbosacral radiculopathy in May 1987. Dr. Smith admitted claimant to the hospital for tests and performed lumbar fusion surgery in June 1987.

Under these facts, the Commission decided that the employer had failed to show that this delay in payment was justified. We cannot say that such a finding is against the manifest weight of the evidence.

## II

In *Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034, the court stated:

> "It is the province of the Commission to weigh and resolve conflicts in testimony, including medical testimony, and to choose among conflicting inferences therefrom. [Citations.] It is only when the decision of the Commission is without substantial foundation in the evidence or its finding is manifestly against the weight of the evidence that the findings of the Commission should be set aside."

(See also *O'Dette v. Industrial Comm'n* (1980), 79 Ill. 2d 249, 253, 403 N.E.2d 221.) "A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts nor can it substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence." (*Martin v. Industrial Comm'n* (1992), 227 Ill. App. 3d 217, 219, 591 N.E.2d 108.) It has been observed that "[t]he manifest weight of the evidence is that which is 'the clearly evident, plain and indisputable weight of the evidence.' [Citations.] In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." (*Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 54, 426 N.E.2d 1276.) Finally, "[i]f the undisputed facts permit an inference either way *** then the Commission alone is empowered to draw the inference and its decision as to the weight of the evidence will not be disturbed on review." *Morgan Cab Co. v. Industrial Comm'n* (1975), 60 Ill. 2d 92, 97, 324 N.E.2d 425.

■ In the case *sub judice*, the employer contends that there is insufficient evidence to connect the claimant's ill-being in 1987 and subsequent surgery by Dr. Smith to the 1982 accident.

We disagree.

Dr. Bosch began treating the claimant in December 1982. He noted that her back pain was due to a work-related injury. He diagnosed a herniated nucleus pulposus at L4-L5. She continued to see Dr. Bosch until she began treatment with Dr. Medina in March 1984.

Dr. Reider examined her in June 1983. He noted in his report that claimant states her pain is due to the injury at work. Dr. Reider felt that objective findings were not possible due to the claimant's pregnancy (claimant gave birth in December 1983), but that the subjective pain appeared to be sufficient to prevent her from working at a manual labor job.

Dr. Medina admitted claimant to the hospital in March 1984. He diagnosed "lumbosacral radiculopathy with chronic pain [and] chronic lumbosacral strain." He treated her until December 1986 at which time Dr. Medina noted that claimant would be better suited in a job that did not involve manual labor.

Dr. Fischer examined her in April 1987. In his report he noted the work-related incident in 1982 and diagnosed a bilateral lumbosacral strain with radicular radiation of spasm on both sides. He further noted lumbar disk space narrowing between L4-L5, L5-S1 and herniated disk syndrome in the lumbar area. It was Dr. Fischer's

opinion that she sustained an injury resulting in a disability which precluded the claimant from performing functions that required lifting.

Dr. Smith began treating claimant in April 1987. In his June 1987 notes he states that her back pain

> "appears historically related to an incident when she was injured at work in approximately 1982. She subsequently underwent a Chymopapain injection in 1983. She has been treated conservatively with traction and anti-inflammatories as well as Epidural steorid [sic] injections. She has had no improvement based on her findings I feel at this time that I have discussed with her the options of fusion. Explained the possibility that she would not be able to work for a year, that this may not improve her pain, chances being approximately 3 out of 4 that there is the possibility of pain being worse certainly in the immediate postoperative period there would be increased pain, that fusion does not always heal with solid bone and after considering these options, she has decided to proceed with the lumbar fusion from L4 to the sacrum."

The employer argues that the surgery performed by Dr. Smith was unnecessary and that "[t]here was insufficient symptomatology to necessitate such serious surgical intervention." However, the employer does not support this assertion. There is no evidence that any doctor recommended against surgery. Similarly, there is no doctor that ever disputed that the claimant's pain was not due to the incident at work.

According to Dr. Smith, the surgery was reasonable and not unnecessary. That fact alone, if believed, is sufficient to support the Commission's decision. While there may be support in the record for the employer's position, we cannot say that such a conclusion is clearly apparent. Because the Commission's findings have substantial foundation, the decision cannot be said to be against the manifest weight of the evidence.

Based upon the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

WOODWARD, McCUSKEY, and RARICK, JJ., concur.

JUSTICE MCCULLOUGH, specially concurring:

I write this only in further explanation of my position with respect to the interpretation of section 19(k). That section provides, as the majority points out, "the Commission may award compensation

additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award." (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(k).)

I do not interpret *Moore* as requiring that the Commission, if it does award penalties, must award penalties on the total amount of the award. Section 19(k) provides, as stated, the Commission "*may* award compensation additional to that otherwise payable." (Emphasis added.) The Commission is not required by that section to award the penalties on the full amount. It has discretion and as I have indicated, "may" award penalties on the total amount of the award.

Such an interpretation would be consistent with prior dispositions made by this court in penalty matters under section 19(k).