771 N.E.2d 35 (2002)
331 Ill. App.3d 405
264 Ill.Dec. 631
NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION, Appellant,
v.
The INDUSTRIAL COMMISSION, et al. (Harold N. Mayes, Appellee).
No. 1-01-3285 WC.
Appellate Court of Illinois, First District, Industrial Commission Division.
May 16, 2002.
*38 Law Offices of James M. O'Brien, Montgomery, for Appellant.
Wiedner & McAuliffe, Ltd., Mark Matranga & Michael F. Doerries, Chicago, for Appellee.
Justice RARICK delivered the opinion of the court:
On December 14, 1987, claimant, Harold Mayes, was awarded permanent total disability (PTD) benefits pursuant to the Workers' Compensation Act (Ill.Rev.Stat. 1986, ch. 48, par. 138.1 et seq.) (Act) for injuries sustained while in the employ of Navistar International Transportation Corporation (Navistar).
On January 11, 1979, Mayes sustained accidental injuries to his left leg, which required surgical intervention and lengthy periods of inactivity. On December 14, 1987, the arbitrator found that such injuries arose out of and in the course of Mayes' employment and that he was permanently and totally disabled as a result thereof. She further found that Mayes' orthopedic problems and limitations were complicated by his obesity, diabetes and hypertension, which did not manifest until after the accident.
On August 28, 1991, Mayes followed up with Dr. Acuna, an orthopedic surgeon, who concluded that Mayes was unable to work because of limited motion and pain in the left knee as well as arthritis.
From February 24, 1992, through March 2, 1992, Mayes was treated at Gottlieb Memorial Hospital for thrombophlebitis and insulin dependent diabetes. He followed up with Dr. Popper for treatment of these conditions.
On October 25, 1993, Mayes returned to Dr. Acuna for reevaluation. He was walking with a cane and the range of motion in his back was markedly limited. Dr. Acuna reported that Mayes' permanent disability was unchanged.
On October 23, 1993, Mayes went to the Gottlieb Hospital emergency room where he was diagnosed with Bell's palsy. On October 25, 1993, Dr. Popper diagnosed recurrent thrombophlebitis, insulin dependent diabetes, Bell's palsy and hypertension. Dr. Popper noted that Mayes could not and should not even be expected to return to work.
From June 2, 1994, through March 24, 1995, Navistar made repeated attempts to contact Mayes, requesting that he provide current medical reports to substantiate his ongoing disability. Mayes was told that if he failed to cooperate his PTD benefits would be suspended.
On March 11, 1995, Mayes was treated at Gottlieb emergency room for a nonhealing sore to his great left toe. He was diagnosed with manifestations of diabetes and chronic skin ulcers. Mayes was given medication and told to wear an orthopedic shoe.
On March 24, 1995, a letter was sent to Mayes advising him that his benefits were being suspended because of his failure to cooperate regarding a current medical examination.
On April 17, 1995, Mayes went to the Gottlieb emergency room complaining of joint pain in his left knee. An x-ray revealed degenerative changes. Mayes was diagnosed with chronic knee pain. Mayes saw Dr. Acuna on April 20, 1995, regarding his knee pain. Dr. Acuna gave Mayes an injection.
*39 On April 28, 1995, Mayes saw Dr. Acuna after falling on his left knee the day before. Dr. Acuna gave Mayes another injection and prescribed pain medication and physical therapy. Mayes underwent physical therapy at C & S Rehabilitation Services from May 10, 1995 through May 24, 1995. Also on April 28, 1995, Mayes received a letter indicating that he had been scheduled for an exam with Dr. Marquardt on May 15, 1995, and that his benefits would be reinstated after the results of his exam were reviewed. Mayes did not receive a check to cover the costs incurred in attending such exam. Mayes did not attend the exam because he was ill, although he attended a physical therapy session that day.
On May 16, 1995, Navistar had Pinkerton Investigation Services perform a surveillance of Mayes. He was seen riding a lawn mower for 13 minutes.
On May 19, 1995, Mayes was sent a letter requesting that he submit to Navistar a letter stating that he was willing to appear for a reexamination. The letter indicated that an appointment would be rescheduled and that he would be advised of the date and time.
On February 23, 1996, Mayes was sent a letter indicating that to begin the process of reinstating his benefits, Mayes had to submit a letter stating that he was willing to appear for a medical exam. The letter stated that once the medical exam was complete and the report received and reviewed, Mayes' benefits might be reinstated.
On April 22, 1998, Mayes filed a petition seeking penalties pursuant to section 19(k) and attorney fees pursuant to section 16 of the Act. Mayes argued that Navistar had unilaterally terminated his PTD benefits without filing a section 8(f) petition seeking a determination that Mayes' disability had "diminished or ended." Mayes also filed a petition for review of agreement or award pursuant to section 8(a) of the Act.
On April 29, 1998, Mayes saw Dr. Acuna because the wound on his left toe had reopened. Dr. Acuna advised Mayes to get an x-ray of his big toe. Dr. Acuna also prescribed pain medication for Mayes' chronic back pain.
On May 16, 1998, Navistar resumed Mayes' PTD benefits after receiving his medical records. Navistar subsequently hired a private investigator to conduct further surveillance on Mayes. Mayes was observed sitting in a chair and waxing his car and sitting in a lawn chair by his antique car at a car show. Several neighbors reported seeing Mayes walk with a cane or walker; others said that he never used a cane. Several reported seeing him work on his antique car and mowing the lawn with a riding mower.
On July 14, 1998, Dr. Acuna's April 29, 1998, office notes and the C & S Rehabilitation notes for May 10, 1995 through May 24, 1995, were sent to Navistar's attorney.
On July 22, 1998, Navistar filed a motion to suspend and terminate Mayes' PTD benefits from July 22, 1994, the date Mayes agreed to provide Navistar with annual physicians' reports, until May 21, 1998, the date he actually provided such reports. The motion also sought the termination of Mayes' benefits effective March 24, 1995, because he failed to return to gainful employment as of that date. Navistar also filed an objection and response to Mayes' petitions.
On August 31, 1998, Mayes was examined by Dr. Blonsky, a neurologist, at Navistar's request. Mayes gave a history of injuring his left hip, left leg, and back, and fracturing his femur as a result of the January 1979 accident. He had a rod placed in his femur and had an operation on his left knee. As a result, Mayes found *40 it difficult to walk straight or comfortably and had developed back problems. Mayes suffered the onset of diabetes in May of 1981. He developed right-sided Bell's palsy in 1993 and left-sided Bell's palsy in 1996. Mayes stated that he became exhausted after walking one block. An examination revealed an extremely rotated left leg when walking, tightening of his left knee, palpable spasm in the vertebral musculature from the base of the skull to the sacrum, reduced range of motion of the back, and edema of both lower limbs.
Based upon a summary of Mayes' medical records, a review of the surveillance tapes, and his examination, Dr. Blonsky opined that Mayes was not permanently and totally disabled and was capable of functioning at the light to medium work level. The only significant restriction Dr. Blonsky placed on Mayes was that he be restricted to walking no more than a half block.
On October 5, 1998, Mayes was again evaluated by Dr. Acuna. Mayes walked with a cane but had no specific complaints, except for chronic pain in his left knee. An examination revealed tenderness over the lumbar region and over the left knee, with limited flexion of the knee. X-rays of the lumbosacral spine disclosed very mild arthritic changes. Dr. Acuna diagnosed chronic low back pain, arthritic changes in the knee and lower spine, and diabetes mellitus. Dr. Acuna opined that Mayes continued to be permanently disabled.
On December 23, 1998, and February 19, 1999, Mayes underwent an initial intake and vocational testing with David Pastsavos, a vocational rehabilitation consultant with Independent Rehabilitation Services, Inc., at the request of Navistar. A medical history was taken and Mayes' medical records were reviewed. Mayes was interviewed by Pastsavos. Pastsavos opined that Mayes was capable of gainful employment in the light to medium category. Pastsavos conducted a labor market survey. Based upon Mayes' prior work history, Dr. Blonsky's restrictions and the result of Mayes' vocational testing, Pastsavos identified 60 possible positions Mayes could perform. Pastsavos opined that both full-time and part-time positions within Mayes' restrictions were available to him.
Dr. Acuna gave an evidence deposition on March 12, 1999. Dr. Acuna testified that Mayes was disabled from October 25, 1995, through April 29, 1998, and continued to be permanently totally disabled because of his chronic low back pain, permanent swelling of his left leg, the risk factor associated with his obesity, and his need to use a cane. His opinion of Mayes' disability did not change after viewing the surveillance tapes of Mayes or Dr. Blonsky's report.
On March 19, 1999, E.P.S. Rehabilitation performed an initial evaluation and vocational rehabilitation plan with respect to Mayes. Mayes' medical history, educational history and work history were taken. Mr. Steffan, the rehabilitation counselor, felt that Mayes was not placeable in full-time employment and that he could not pass even the most basic preemployment physical. Steffan also felt that it was unlikely that Mayes had any useable or transferrable skills after an over 20 year absence from the job market. Steffan opined that, given Mayes' age, seventh grade education, long absence from the job market, and his lack of transferrable skills to sedentary occupations, Mayes not participate in a return-to-work program.
The Industrial Commission (Commission) found that Mayes was entitled to unpaid PTD benefits for the period of March 24, 1995, through May 15, 1998, a total of 164-1/7 weeks. The Commission also awarded $18,949.60 in penalties pursuant *41 to section 19(k) and $7,579.84 in attorney fees pursuant to section 16 as a result of Navistar's unilateral termination of Mayes' PTD benefits. The Commission noted that the burden of proof was on the employer to show that an award should be modified pursuant to section 8(f) of the Act. Navistar terminated Mayes' benefits before properly petitioning the Commission pursuant to section 8(f) and receiving Commission approval. The Commission further noted that Navistar could not premise its actions on section 12 of the Act because its termination of benefits came three weeks before Mayes failed to attend the scheduled examination with Dr. Marquardt. The Commission also noted that Mayes would not have been obligated to attend this exam because Navistar did not pay his travel expense in advance, as required by section 12. The Commission found that King v. Industrial Comm'n, 189 Ill.2d 167, 244 Ill.Dec. 8, 724 N.E.2d 896 (2000), wherein our supreme court held an employer could terminate section 8(f) benefits where the claimant refused to attend a section 12 exam, did not apply because the termination of benefits in King was made pursuant to an order by the Commission.
The Commission also denied Navistar's motion to suspend and terminate Mayes' benefits. The Commission relied upon the opinion of Dr. Acuna, Mayes' treating physician, whose records and opinions reveal that Mayes' medical condition remained unchanged and chronic. The Commission noted that at no time did Dr. Acuna release Mayes to return to work.
The circuit court of Cook County increased the amount of penalties and fees to $62,811.77 and $12,362.35, respectively, but otherwise confirmed the decision of the Commission. The court ruled that the amount of penalties and fees should be calculated not on the period that PTD benefits were not paid, but on the entire amount of PTD benefits that had accrued from the date of the award, December 14, 1987, to the date payments were receivedMay 15, 1998.
On appeal, Navistar argues first that the Commission erred as a matter of law in denying its motion to suspend and terminate Mayes' PTD benefits. Navistar contends that King is applicable and controlling, and authorized Navistar to suspend Mayes' benefits when he refused to reply to continued requests for medical information. Navistar also argues that it was justified in suspending payment of Mayes' benefits because he refused to appear for a section 12 exam.
In King, the employer filed a motion to suspend the claimant's PTD benefits pursuant to section 12 of the Act, arguing that compensation should be suspended because the claimant refused to comply with a section 12 request for a medical examination. After a hearing, the Commission denied the motion, but ruled that section 12 gave the employer the right to a medical exam and ordered the claimant to submit to such an exam. The circuit court confirmed the decision of the Commission and this court ultimately affirmed. King v. Industrial Comm'n, 301 Ill.App.3d 958, 235 Ill.Dec. 142, 704 N.E.2d 715 (1998).
The issue on appeal to our supreme court was whether a claimant who received a PTD award pursuant to section 8(f) can be required to submit to an employer's request for medical examination pursuant to section 12, even though the employer has not filed a petition to modify claimant's benefits pursuant to section 8(f) or section 19(h). Our supreme court first noted that section 8(f) provides for termination or reduction of a PTD award where a claimant returns to work or is able to do so and earns or is able to earn as much as before the accident, and that section 19(h) grants *42 employers the right to have certain compensation award revised, but only within 30 months of the award. The court also noted that section 12 required a claimant to submit to a medical exam at the request of the employer, and that the employer could suspend payment of benefits if the claimant refused to submit to such an exam. Our supreme court held that an employer may suspend payment of benefits where a claimant refuses to submit to a section 12 medical exam, even in, the absence of a petition pursuant to section 8(f) or section 19(h). King v. Industrial Comm'n, 189 Ill.2d 167, 244 Ill.Dec. 8, 724 N.E.2d 896 (2000).
We agree with Navistar that the Commission improperly distinguished King. Contrary to what the Commission stated, the claimant's benefits in King were not terminated, nor was there any order by the Commission to do so. Nevertheless, King does not support Navistar's position.
Navistar attempts to extrapolate from King a right, independent of section 12, to receive current medical information on a claimant receiving PTD benefits, and a concomitant right to terminate benefits if such information is not provided. Nothing in King can be fairly read to support such a proposition. Moreover, nothing in the Act gives employers the right to suspend payment of benefits for failure to provide current medical information upon request. The import of King is clear. If an employer believes that a claimant's medical condition has changed such that he is able to return to work, it can request the claimant, to submit to a medical examination pursuant to section 12. If the claimant refuses to submit to such an exam, the employer may then suspend the claimant's benefits.
Navistar contends that it was justified in suspending payments of Mayes' benefits because he failed to attend a medical exam requested pursuant to section 12. In its April 28, 1995, letter Navistar requested Mayes to appear for a section 12 examination with Dr. Marquardt on May 15, 1995. Navistar admits, however, that it failed to pay in advance the travel expenses, as required by section 12. Thus, Mayes was not required to attend the examination. Moreover, the exam was not scheduled at a time and place reasonably convenient for Mayes, as required by section 12. The record discloses that Mayes had begun a physical therapy program several days prior to the scheduled-exam and had an appointment on the day the exam with Dr. Marquardt was scheduled, Further, Navistar suspended payment of Mayes' benefits on March 24, 1995, almost two months prior to the scheduled exam with Dr. Marquardt. Mayes' failure to attend the exam cannot be used to justify a prior termination of PTD benefits. See FenclTufo Chevrolet v. Industrial Comm'n, 169 Ill.App.3d 510, 120 Ill.Dec. 15, 523 N.E.2d 926 (1988).
Navistar next argues that the Commission's award of penalties and fees was contrary to the law and against the manifest weight of the evidence. Navistar maintains that the Commission's decision was contrary to the law because its suspension of benefits was warranted under King. Having already rejected this argument, we need not consider it further.
Navistar also contends that the Commission's finding that its termination of benefits was unreasonable and vexatious was contrary to the manifest weight of the evidence. Navistar maintains that it suspended Mayes benefits only after he ignored repeated requests for current medical information and after repeated warnings that his benefits might be terminated if he failed to provide such information. As noted above, Navistar had no right to suspend payment of Mayes' benefits *43 merely because he failed to respond to its requests for information on his current medical condition. Unilateral suspension of payments in contravention of a final decision by the Commission is unreasonable and vexatious. Keystone Steel and Wire Company v. Industrial Comm'n, 85 Ill.2d 178, 52 Ill.Dec. 55, 421 N.E.2d 918 (1981).
Navistar also argues that the circuit court erred in increasing the amount of penalties and attorney fees. Specifically, Navistar argues that the circuit court erred in basing its calculation of section 19(k) penalties and fees on the amount of PTD benefits accrued from the date of the award, December 14, 1987, to the date payments were resumed, May 15, 1998. We agree.
Section 19(k) provides for additional compensation "equal to 50% of the amount payable at the time of such award." 820 ILCS 305/19(k) (West 1994). In increasing the amount of penalties, the circuit court in the present case relied on Moore v. Industrial Comm'n, 188 Ill.App.3d 31, 135 Ill.Dec. 494, 543 N.E.2d 1062 (1989). In Moore, the court considered the meaning of the phrase "amount payable at the time of such award." In its appeal to the Commission, the employer had attempted to claim a credit in the amount of $4,811.82 for a prior payment. The Commission ruled that because the employer failed to request a credit for this payment at the time of arbitration, it could not now have a credit for that payment. Nevertheless, when the employer paid the award to the claimant, it withheld this amount. Claimant filed a petition for section 19(k) penalties and attorney's fees. The Commission awarded 19(k) penalties in the amount of 50% of the entire original award. The circuit court found that the Commission's was erroneous as a matter of law, and reduced the penalty to 50% of $4,811.82, the amount of the award which remained unpaid by the employer. On appeal to this court, the issue was whether the phrase "amount payable at the time of such award" referred to the amount of the award which remained unpaid at the time the penalty is awarded, or the entire amount of the original compensation award. After considering the language of the statute, the remedial purposes of the Act, Larson's treatise on Workers' Compensation, and our supreme court's holding in Robertson v. Travelers Insurance Company, 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866 (1983), this court concluded that "amount payable" referred to the entire amount of the type of benefit originally awarded.
Mayes argues that pursuant to Moore, penalties and fees must be based on the entire amount awarded, not merely that portion which is unpaid. We do not interpret Moore so broadly. Rather, we believe that Moore stands for the proposition that the Commission may award penalties and fees on the whole amount, rather than just the unpaid portion. The Commission is not required to do so, however, and it may, in its discretion, base the penalty and fee awards on that portion of the award which has accrued but has not been paid. The court in Moore expressed a concern that an employer could intentionally underpay a benefit award, forcing the claimant to seek penalties, then pay the remainder of the award immediately prior to the penalty hearing. If penalties and fees were to be paid only on the unpaid portion, the court surmised, the penalty and fee award would be zero. We do not agree. Nothing precludes the Commission from awarding penalties and fees notwithstanding the fact that the employer has paid all amounts due and owing as of the time of the penalty hearing.
In Little Company of Mary Hospital v. Industrial Comm'n, 256 Ill.App.3d 1036, *44 195 Ill.Dec. 73, 628 N.E.2d 537 (1993), the employer agreed to advance six months' TTD benefits as an advance against any permanency or TTD award and payment of outstanding medical expenses. After six months, the advance had not been made, and the claimant sought penalties and attorney fees. The arbitrator found the employer's delay to be intentional and frivolous, and awarded section 19(k) penalties in the amount of 50% of the TTD award. Prior to review by the Commission, the employer paid the advance. The Commission affirmed the decision of the arbitrator, and the circuit court confirmed the decision of the Commission. The employer appealed the imposition of section 19(k) penalties, arguing that the imposition of penalties on the entire TTD award was excessive. The employer attempted to distinguish Moore by arguing that liability for payment of TTD arose as a matter of contract rather than as a result of an award by the Commission. Rejecting the employer's argument, we held that "the rule set forth in Moore (to apply section 19(k) penalties to the entire amount of compensation due at the time of the penalty hearing) applied whether the liability to pay resulted from a settlement contract or an award." (emphasis added) Little Company of Mary Hospital, 256 Ill.App.3d at 1039-40, 195 Ill.Dec.73, 628 N.E.2d at 540.
Although not at issue in Little Company of Mary Hospital, we note that the Commission imposed penalties and fees on the employer despite the fact that the employer paid all amounts due and owing prior to the penalty hearing. Contrary to the Moore court's fears, the claimant was not left without a remedy. Moreover, Justice McCullough specifically noted in his special concurrence that nothing in Moore requires the Commission to award penalties on the total amount of the award, but rather it has the discretion to do so if the circumstances so warrant. Little Company of Mary Hospital, 256 Ill.App.3d at 1041-43, 195 Ill.Dec. 73, 628 N.E.2d at 541-42 (McCullough, P.J., specially concurring).
To clarify, Section 19(k) penalties and attorney fees pursuant to section 16 may be based on the entire amount of the award that has accrued or only the unpaid portion thereof, as the Commission in its discretion sees fit. The Commission cannot impose penalties and fees on that portion of an award that has not accrued, however. See Zitzka v. Industrial Comm'n, 328 Ill.App.3d 844, 262 Ill.Dec. 945, 767 N.E.2d 405 (2002). In the present case, the Commission, in its discretion, chose to award penalties and fees based on that portion of the PTD award which accrued from March 24, 1995, through May 15, 1998. The circuit court erred in increasing the amount of the penalty and fee award.
Finally, Navistar argues that the Commission's decision to award PTD benefits for the period of March 24, 1995, through May 15, 1998, is contrary to the manifest weight of the evidence. Specifically, Navistar maintains that the Commission erred in relying upon the opinions of Dr. Acuna when Dr. Acuna stated on cross-examination that he relied on Mayes' truthfulness and accuracy in forming such opinions, and that he would be "surprised" and "bothered" if Mayes had in fact engaged in the types of activities in which his neighbors claimed to have seen him engage.
It is well settled that the determination of whether a causal connection exists between a work-related injury and the employee's condition of ill-being, and the nature and extent of that injury, are questions of fact for the Commission. Yaeger v. Industrial Comm'n, 232 Ill. App.3d 936, 174 Ill.Dec. 66, 598 N.E.2d 263 *45 (1992). In making these determinations, the resolution of conflicts in the evidence, particularly medical opinion evidence, is likewise within the province of the Commission. Teska v. Industrial Comm'n, 266 Ill.App.3d 740, 203 Ill.Dec. 574, 640 N.E.2d 1 (1994). The Commission's decisions on these matters will not be disturbed on review unless they are contrary to the manifest weight of the evidence. Steve Foley Cadillac/Hanley Dawson v. Industrial Comm'n, 283 Ill.App.3d 607, 219 Ill. Dec. 207, 670 N.E.2d 885 (1996). The manifest weight of the evidence is the clearly evident, plain and indisputable weight of the evidence. McRae v. Industrial Comm'n, 285 Ill.App.3d 448, 220 Ill. Dec. 969, 674 N.E.2d 512 (1996). A decision is contrary to the manifest weight of the evidence only where the opposite conclusion is clearly apparent. Ghere v. Industrial Comm'n, 278 Ill.App.3d 840, 215 Ill.Dec. 532, 663 N.E.2d 1046 (1996). The test is not whether this or any other tribunal might reach an opposite conclusion but whether there is sufficient factual evidence in the record to support the Commission's determination. Beattie v. Industrial Comm'n, 276 Ill.App.3d 446, 212 Ill.Dec. 851, 657 N.E.2d 1196 (1995).
Reviewing the record, we cannot say that the Commission's determination that Mayes is permanently and totally disabled is contrary to the manifest weight of the evidence. Dr. Popper opined that Mayes would never be able to work and Dr. Acuna continually opined that Mayes was disabled and unemployable. Neither the surveillance tapes nor Dr. Blonsky's report altered Dr. Acuna's opinion. Further, the record reveals that Mayes was 60 years old at the time of the Commission's hearing. He had only a seventh grade education, and his entire work history consisted of heavy laboring tasks. He had no vocational training and had been out of the work force for over 20 years. Edward Steffan, Mayes' vocational rehabilitation counselor, stated that Mayes was not capable of gainful employment, nor was he a viable candidate for any position identified by David Pastsavos, Navistar's rehabilitation consultant. There is more than sufficient evidence in the record to support the Commission's decision.
For the foregoing reasons, the judgment of the circuit court of Cook County is reversed with respect to the issue of penalties and fees, and affirmed in all other respects. With respect to the issue of penalties, the decision of the Commission is reinstated.
Reversed in part; affirmed in part; Commission decision reinstated in part.
McCULLOUGH, P.J., HOFFMAN, O'MALLEY, and HOLDRIDGE, JJ., concur.